### Chandler PHILLIPS

v.

### Marilyn Alice SCOTT, Trustee of the Ann Lloyd Phillips Irrevocable Trust.

### No. 3:04 CV 2059(JGM).

United States District Court, D. Connecticut.

Sept. 8, 2006.

Alexander H. Schwartz, Southport, CT, for Chandler Phillips.

Eric P. Smith, Robert William Lynch, Lynch, Traub, Keefe & Errante, New Haven, CT, for Marilyn Alice Scott.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARGOLIS, United States Magistrate Judge.

On December 6, 2004, plaintiff Chandler Phillips commenced this diversity action against his sister, defendant Marilyn Alice Scott, as the trustee of the Ann Lloyd Phillips Trust, an irrevocable trust created on or about May 8, 1998 [the "Trust"], for unjust enrichment (Count One) and an accounting of the assets of the Trust (Count Two). (Dkt.# 1). On January 10, 2005, defendant filed her Answer, with four affirmative defenses. (Dkt.# 8). On September 14, 2005, the parties consented to trial before this Magistrate Judge. (Dkt.# 12). Thereafter, on December 6, 2005, defendant filed her pending Motion for Summary Judgment with brief and Local Rule 56(a)1 Statement in support.[1] (Dkt.# 19). Plaintiff filed his brief, affidavit and Local Rule 56(a)2 Statement in opposition on June 7, 2006. (Dkt. # 30.[2] *See also* Dkts. ## 16, 20–29). Defendant filed her reply brief on July 27, 2006. (Dkt. # 33. *See also* Dkts. ## 31–32).

For the reasons stated below, defendant's Motion for Summary Judgment (Dkt.# 19) as to Count One of plaintiff's Complaint is *granted.*

## I. FACTUAL BACKGROUND

The following factual summary is drawn from defendant's Local Rule 56(a)1 Statement of Facts, filed December 6, 2006 (Dkt.# 19)["Defendant's Statement"] and plaintiff's Local Rule 56(a)2 Statement of Facts, filed June 7, 2006 (Dkt.# 30)["Plaintiff's Statement"], and the accompanying affidavit, deposition testimony and exhibits. Such factual summary, therefore, does not represent factual findings of the Court.

Plaintiff alleges that in 1974 he entered into an agreement with his mother and father, Ann Lloyd Phillips ["Ann Phillips"] and Chandler Arza Phillips, concerning property they occupied as their home in LaCanada, California ["LaCanada Agreement"]. (Defendant's Statement ¶ 1;[3] Plaintiff's Statement ¶ 1; Plaintiff's Depo. at 10). Under the LaCanada Agreement, plaintiff was to pay the mortgage, insurance and taxes on the LaCanada property. In return, plaintiff claims he was to receive the property itself on the death of the last survivor of his parents, or was to receive either the property itself or the proceeds

---

**1.** Attached to defendant's motion, brief and Local Rule 56(a)1 Statement is a copy of excerpts of the deposition transcript of Chandler Phillips, M.D., taken on September 21, 2005 ["Plaintiff's Depo."].

**2.** Attached to plaintiff's brief are the following: copy of excerpts of Plaintiff's Depo.; copy of excerpts of the deposition transcript of Marilyn A. Scott, taken on September 20, 2005 ["Defendant's Depo."]; affidavit of Chandler Phillips, M.D., sworn to June 2, 2006; and Plaintiff's Local Rule 56(a)(2) Statement; and the following four exhibits: copy of Grant Deed, recorded December 30, 1975 (Exh. A); copy of Quitclaim Deed, recorded December 20, 1978 ["Quitclaim

Deed"](Exh. B); copy of Grant Deed, recorded April 28, 1998 (Exh. C)["1998 Deed"]; copy of handwritten correspondence, dated March 10 & 21, and June 3, 1975 ["Ann Phillips' Letters"](Exh. D); and copy of Certificate of Death for Ann L. Phillips, dated August 10, 2003["Death Certificate"](Exh. E).

**3.** Although defendant assigns lower-case letters to her paragraphs, plaintiff responds with the corresponding numbers. (*Compare* Dkts. ## 19 & 30). For ease of reference, the Court will refer to defendant's Statement of Facts with the numbered paragraphs.

of its sale at the time it was sold or vacated by the last of his parents. (Defendant's Statement ¶ 2; Plaintiff's Statement ¶ 2; Plaintiff's Depo. at 19–20). In July 1975, plaintiff's father died and his mother succeeded to his interest in the LaCanada property. (Defendant's Statement ¶ 3; Plaintiff's Statement ¶ 3). In 1975, Ann Phillips executed a deed making the plaintiff a joint tenant with her in the LaCanada property. (Defendant's Statement ¶ 4; Plaintiff's Statement ¶ 4; Plaintiff's Depo. at 11). In December 1978, plaintiff deeded his interest in the LaCanada property back to his mother, for the purpose of removing assets in his name as he was then concerned about being made a defendant in a medical malpractice action. (Defendant's Statement ¶ 5; Plaintiff's Statement ¶ 5; Plaintiff's Depo. at 14–15; *see* Quitclaim Deed). According to plaintiff, who did not seek the advice of counsel at that time, he relied on his mother's statements that their oral agreement would remain in full force and effect even though he executed the deed which she prepared. (*Id.*). Plaintiff claims that he made payments under the LaCanada Agreement, ultimately totaling between $88,000 and $90,000. (Defendant's Statement ¶ 6;

Plaintiff's Statement ¶ 6; Plaintiff's Depo. at 50).[4]

Plaintiff claims that beginning in September 1997, he and his mother had conversations in which his mother told plaintiff that she was interested in selling the LaCanada property and moving to Connecticut to live with her daughter, defendant Marilyn Scott, and her family. (Defendant's Statement ¶ 7; Plaintiff's Statement ¶ 7; Plaintiff's Depo. at 23–24). On May 2, 1998, plaintiff learned in a telephone conversation with Ann Phillips that the LaCanada property had been sold in late April 1998. (Defendant's Statement ¶ 8; Plaintiff's Statement ¶ 8; Plaintiff's Depo. at 24–25). In this May 2, 1998 telephone conversation, plaintiff claims that he told his mother that he required her to honor their agreement by paying him the sale proceeds of the LaCanada property, but his mother informed him that she would not pay him the sale proceeds and might, at some unspecified time in the future, pay him some small portion of those proceeds when she no longer needed the money. (Defendant's Statement ¶ 9; Plaintiff's Statement ¶ 9; Plaintiff's Depo. at 25–26). In this and subsequent conversations between plaintiff and his

---

**4.** Initially plaintiff paid $250 per month on his parents' behalf and after he began to honor his agreement, and at his mother's request, he increased his monthly payments to $350, with the "extra" $100 accumulating so that the accumulated monies would be used periodically to pre-pay the principal amount on the mortgage. (Plaintiff's Statement ¶ 6; *see generally* Ann Phillips' Letters).

Amongst the evidence before the Court are letters purportedly from Ann Lloyd Phillips to plaintiff in which his mother acknowledges plaintiff's decision to "buy" the Phillips family home and explicitly acknowledges plaintiff's "additional $100.00 per month" payments on the mortgage principal. (*See* Ann Phillips' Letters). While this evidence, when viewed in the light most favorable to plaintiff,

would assist plaintiff in making a sufficient showing of an essential element of his case (provided such claim was not barred by the applicable statute of limitations), plaintiff has not asserted a claim for breach of contract, but rather has asserted a claim for unjust enrichment by the Trust. The issue in defendant's motion is not whether an agreement was reached and thereafter breached, but whether plaintiff's unjust enrichment claim is barred by the applicable statute of limitations.

In Plaintiff's Statement ¶ 6, he refers to Plaintiff's Depo. at 38–40; however, copies of those pages were not found in either side's filings. In this Ruling, the Court will not refer to any exhibits not attached to the filings.

mother, she told him that she could not return his investment to him at the time because she needed to live on the proceeds. (Defendant's Statement ¶ 9; Plaintiff's Statement ¶ 9; Plaintiff's Depo. at 34, 41, 42, 77, 83). During this telephone conversation, plaintiff also learned that his mother placed the sale proceeds in a trust that she had created. (Defendant's Statement ¶ 10; Plaintiff's Statement ¶ 10; Plaintiff's Depo. at 34).

In the fall of 1998, plaintiff consulted an attorney regarding his rights under the alleged agreement with his mother, but decided, at that time, not to pursue legal action. (Defendant's Statement ¶ 11; Plaintiff's Statement ¶ 11; Plaintiff's Depo. at 26–28). In January and July 1999, plaintiff wrote jointly to Ann Phillips and defendant Marilyn Scott demanding money pursuant to the alleged agreement and stating, in a letter dated July 22, 1999, that unless his mother immediately remitted $272,500, purportedly half of the sale proceeds of the LaCanada property, there would be no further contact between plaintiff and his mother and defendant Scott. (Defendant's Statement ¶ 12; Plaintiff's Statement ¶ 12; Plaintiff's Depo. at 74–80).[5] Plaintiff did not receive a response to the demand made in the July 1999 letter and he did not speak with his mother after July 1999. (Defendant's Statement ¶ 13; Plaintiff's Statement ¶ 13; Plaintiff's Depo. at 80).

Ann Phillips died on August 10, 2003. (Defendant's Statement ¶ 14; Plaintiff's Statement ¶ 14; Plaintiff's Depo. at 31; Death Certificate). Twelve days later, plaintiff received a copy of his mother's will, the Ann Lloyd Phillips Trust, and a Notification to Heirs and Beneficiaries by Trustee of the Ann Lloyd Phillips Trust ["Notice"]. (Defendant's Statement ¶ 15;

Plaintiff's Statement ¶ 15; Plaintiff's Depo. at 40; Dkt. # 1, Exhs. B–D). The Notice, received by plaintiff on August 22, 2003, contains the following language, in capital letters and bold print:

## WARNING

**YOU MAY NOT BRING AN ACTION TO CONTEST THE TRUST MORE THAN 120 DAYS FROM THE DATE THIS NOTIFICATION BY THE TRUSTEE IS SERVED UPON YOU OR 60 DAYS FROM THE DAY ON WHICH A COPY OF THE TERMS OF THE TRUST IS MAILED OR PERSONALLY DELIVERED TO YOU IN RESPONSE TO YOUR REQUEST DURING THAT 120-DAY PERIOD, WHICHEVER IS LATER.**

(Defendant's Statement ¶ 16; Plaintiff's Statement ¶ 16; *see* Complaint, Exh. B).

Plaintiff has destroyed the checks purportedly evidencing the payments he claims to have made pursuant to his alleged agreement with Ann Phillips. (Defendant's Statement ¶ 17; Plaintiff's Statement ¶ 17; Plaintiff's Depo. at 53). Plaintiff explains that this occurred because of his long-standing business practice of retaining financial documents for a set period of time and then discarding them, and because plaintiff deducted the interest and tax payments he made on the home in LaCanada from his federal tax returns, he retained those documents for four years and then discarded them. (Plaintiff's Statement ¶ 17; Plaintiff's Depo. at 40 & 53). Plaintiff, however, still has copies of his federal tax returns, his check registers for all years (except for 1980), bank statements, and summaries of those registers, which summaries were presented to defendant and her mother

5. This letter is not before the Court, *see* note 4 *supra.* However, plaintiff admits that the document speaks for itself. (Plaintiff's Statement ¶ 12).

during her lifetime. (Plaintiff's Statement ¶ 17; Plaintiff's Depo. at 40 & 53).

## II. DISCUSSION

The standard for summary judgment is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). Upon motion, following adequate time for discovery, Rule 56(c) requires that summary judgment be entered against a party

> who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED.R.CIV.P. 56(c). "On summary judgment the inferences to be drawn from the underlying facts contained in the [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "If reasonable minds could differ as to the import of the evidence, ... the moving party simply cannot obtain summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir.1997) (citations & internal quotation marks omitted). Thus, the party moving for summary judgment must "carry its burden of showing the absence of any genuine issue of fact." *Adickes*, 398 U.S. at 153, 90 S.Ct. 1598.

Defendant seeks an entry of summary judgment on grounds that plaintiff's claims set out in Count One of his Complaint, filed on December 6, 2004, in which he alleges unjust enrichment, are time-barred under any applicable standard.[6] (Dkt. # 19, Brief at 3).

## A. APPLICABLE LAW

This case comes before this Court on diversity jurisdiction[7] under which a federal court applies the substantive law of the forum state. *See Klaxon Co. v. Sten-*

---

6. According to defendant, plaintiff's second count of his two-count Complaint seeks an accounting of the "assets, expenditures and liabilities" of the Trust, which is unrelated to plaintiff's first count in which he asserts a claim of unjust enrichment arising out of an alleged breach of an oral agreement entered into by plaintiff and his father and mother, through which claim plaintiff seeks to follow the alleged proceeds of the sale of the LaCanada property that was the subject of the oral agreement, into the Trust. (*See* Dkt. # 19, Brief at 1–2). "Without acknowledging the

right claimed by ... plaintiff [to an accounting], ... defendant has attempted to gather and convey to ... plaintiff such an accounting during the course of this action...." (*Id.* at 2–3). Accordingly, defendant's pending Motion for Summary Judgment is addressed "solely" to Count One of the Complaint. (*Id.* at 3).

7. Plaintiff is a resident of Ohio and defendant is a resident of Connecticut. (Dkt.# 1, ¶¶ 1–2).

*tor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties, however, dispute the substance of plaintiff's claim and which state law applies.

Defendant posits that the gravamen of plaintiff's unjust enrichment claim is that plaintiff entered into an oral agreement with his mother, a California resident, concerning his acquisition of an interest in the LaCanada, California property, which agreement plaintiff contends his mother breached when she sold the property and transferred the proceeds she received from its sale into the Trust. (Dkt. # 19, Brief at 10). According to defendant, whether the choice of law question is analyzed as a contract claim or a claim sounding in restitution, California substantive law should govern this case under the "most significant relationship" test. (*Id.* at 10–12). In addition to the foregoing, defendant contends that this case presents a choice of law issue regarding the applicable statute of limitations,[8] wherein either state's statute would bar this claim, and

that notwithstanding, plaintiff's claim would be barred through the doctrine of laches.[9] (Dkt. # 19, Brief at 14–19, 25–29; Dkt. # 33, at 5–10).

According to plaintiff, defendant appears to

> miss—or to mischaracterize—the nature of plaintiff's [C]omplaint. Plaintiff is not suing his mother for breach of contract. He is suing the Trustee of the Trust his mother created for unjust enrichment because the Trust received a benefit, at his expense, for which it has not made any compensation.

(Dkt. # 30, Brief at 9, n. 6). Moreover, plaintiff contends that defendant's conflict of laws analysis is "factually flawed" as it fails to include that the Trust's retention of the benefit of plaintiff's oral agreement with his mother took place in Connecticut from June 1998 until today (except for a two-week period); his mother, the Settlor and initial Trustee, failed from at least May 1998[10] until her death to fully disclose

---

**8.** Defendant argues that plaintiff's claims are "clearly" time-barred as a matter of California law, and Connecticut law "has no substantial interest in its application of any longer limitation period available under Connecticut law." (Dkt. # 19, Brief at 18; *see also* Dkt. # 33, at 6). Moreover, defendant urges this Court to apply California substantive law and California law concerning the timeliness of plaintiff's claims. (*Id.*).

However, defendant also observes that even if plaintiff's claims are governed by a Connecticut statute of limitations, it does not follow that the substantive legal analysis relating to the timeliness issue is a matter of Connecticut procedural law. (*Id.* at 19). Rather, such analysis represents a set of substantive rules of decision which California law governs. (*Id.*).

Defendant asserts that it is well-established under Connecticut law that actions seeking to impose a constructive trust are governed by statutes of limitation, with the longest possible limitation period applicable is the six year period provided under Conn. Gen.Stat. § 52–576 for enforcement of rights arising under a

contract. (Dkt. # 19, Brief at 26–27; Dkt. # 33, at 5). Defendant urges that because the longest possible statute of limitations bars plaintiff's action, "it is not entirely necessary for this Court to resolve the choice of law questions...." (Dkt. # 33, at 5). Moreover, according to defendant, it is also well-established under Connecticut law that an action that is purely equitable in nature is governed by the doctrine of laches, rather than a statute of limitations, and the statute of limitations is presumed to have run when the statute of limitations applicable to the most closely analogous legal claim has run, which in this case would be six years. (Dkt. # 19, Brief at 27–28).

**9.** According to defendant, "laches involves substantive rules of decision pertaining to the timeliness of equitable claims, and consequently that the California law of laches, rather than Connecticut authority, should govern here." (Dkt. # 19, Brief at 18–19).

**10.** Ann Lloyd Phillips moved to Connecticut in June 1998. (Dkt. # 30, Brief at 6).

that she had no intent to honor her agreement with her son; defendant, successor Trustee, also knew of her mother's intent during that time period and did not disclose it to plaintiff;[11] and the administration of the Trust, which since its formation in 1998 has been made up predominantly of "movables," has, since June 1998, been in Connecticut, not California. (Dkt. # 30, Brief at 9). Additionally, as stated above, plaintiff asserts that defendant misinterprets the gravamen of plaintiff's Complaint which is not a claim for unjust enrichment as a result of a breach of the oral contract, but rather a claim for unjust enrichment asserted against the Trust that plaintiff's mother created "and which at no cost to itself[,] benefited at his expense." (*Id.* at 11). Thus, while plaintiff agrees that the "most significant relationship" test applies, plaintiff argues that Connecticut is the state with such relationship because it was not until plaintiff's mother took the proceeds from the sale of the LaCanada property, placed them in the Trust and then refused to pay them to plaintiff that the enrichment of the Trust actually became

"unjust," and this Trust is administered in Connecticut and continues to receive the benefit of Ann Phillip's conduct through today.[12] (Dkt. # 30, Brief at 11–12).

In her reply brief, defendant acknowledges the "inescapable circularity" in plaintiff's case, namely that although plaintiff asserts that this is an action for unjust enrichment of the Trust, all of the conduct alleged to be wrongful was that of Ann Phillips acting in her individual capacity and neither that conduct, nor any alleged enrichment of the Trust, was wrongful or unjust unless there was a legally cognizable agreement between plaintiff and his mother which she breached. (Dkt. # 33, at 1). Moreover, defendant maintains that plaintiff's claim came into existence while Ann Phillips lived in California and nothing associated with her subsequent residence in Connecticut is material to the claim or its legal viability. (*Id.* at 6).

■ Plaintiff's claim for unjust enrichment[13] is pled, in part, as follows in Count One of plaintiff's Complaint:[14]

---

**11.** Defendant observes that plaintiff "has failed to offer even a hint as to the source of any obligation on the defendant's part to tell the plaintiff what she knew regarding her mother's plans." (Dkt. # 33, at 6, n. 21). Moreover, even with excerpts from defendant's deposition transcript before the Court, defendant has offered no evidence to support this contention. (*See* Defendant's Depo.)

**12.** Plaintiff further posits that almost immediately after the Trust came into legal existence in 1998, it received the proceeds of the sale of the LaCanada property; Ann Phillips moved to Connecticut within a month after she created the Trust from which time the Trust has been administered in Connecticut; and Ann Phillips, defendant, plaintiff's brother and the Trust's successor trustee thereafter withheld the fact that Ann Phillips did not intend to honor her agreement with plaintiff. (Dkt. # 30, Brief at 12–14).

That notwithstanding, the Trust continued to be handled by Ann Phillips' lawyer in California throughout her lifetime and it was this lawyer who sent plaintiff the Notice, a copy of the Trust and a copy of the will in August 2003. (*See* Dkt. # 33, at 6, n. 17).

**13.** In order to prove a claim for unjust enrichment, plaintiff must establish: (1) that defendant received a benefit, (2) that defendant unjustly did not pay plaintiff for the benefit, and (3) that the failure of payment was to plaintiff's detriment. *Weisman v. Kaspar*, 233 Conn. 531, 550, 661 A.2d 530 (1995) (citation omitted). The doctrine of unjust enrichment is "essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Id.* (citation omitted).

**14.** Plaintiff also alleges the following factual recitation in this Count: During 1975, plaintiff's parents began to discuss planning for their retirement and for the disposition of their assets, the result of which discussions

21. During Ann Lloyd Phillip's lifetime, [p]laintiff made all of the mortgage payments, principal prepayments from the reserve fund, insurance payments and tax payments on the [p]roperty because of the express statements Ann Lloyd Phillips made to him that she held a "life estate" in the [p]roperty and would transfer ownership of the [p]roperty to him upon her death or her voluntary relinquishment of her "life estate."

22. Ann Lloyd Phillips breached her agreement with [p]laintiff when she sold the [p]roperty and thereafter transferred the proceeds she received from its sale into the Trust. It would be a violation of equity and good conscience for the Trust to continue to benefit from the breach committed by its trustor.

(Dkt.# 1).

As his pleading explicitly reads, the basis for plaintiff's claim for unjust enrichment is the oral agreement plaintiff entered into with his parents, which he

alleges his mother breached "when she sold the [LaCanada] [p]roperty and thereafter transferred the proceeds she received from its sale into the Trust." (Dkt.# 1, ¶ 22). Thus, in order for the Trust to have been unjustly enriched, an oral agreement had to exist between plaintiff and his mother, which his mother breached. It would be her breach of such an agreement that would result in the funding of the Trust with monies from which the Trust "continue[s] to benefit." (Id.). Although plaintiff urges this Court to adopt the facts he asserts are material to his claim for unjust enrichment [15]—namely that the Trust's retention of the benefit of the agreement took place in Connecticut from June 1998 until today; that his mother, the Settlor and initial Trustee, failed from at least May 1998 until her death, to fully disclose that she had no intent to honor her agreement with her son; [16] that defendant, successor Trustee, also knew of her mother's intent during that time period

was an agreement that in exchange for plaintiff paying the future monthly mortgage obligation, insurance premiums, and periodic tax payments due on the LaCanada property, plaintiff's parents would transfer title to the LaCanada property to him upon either their death, the death of their survivor, or their decision to sell or vacate the property. Plaintiff commenced making such payments on March 15, 1975, and continued to do so after his father committed suicide on July 4, 1975. On December 30, 1975, Ann Phillips transferred title to the property to herself and plaintiff, which deed was recorded on that day. In May 1998, without informing plaintiff of the disposition of the LaCanada property, Ann Phillips moved from the LaCanada property and subsequently resided in Connecticut with defendant and her family. Plaintiff later discovered that his mother sold the property on or about April 28, 1998 to a third party for the sum of $555,000.00. Ann Phillips died in Connecticut on August 11, 2003 and on or about August 22, 2003, plaintiff received the Notice from which plaintiff

learned that "in direct violation of her agreement with him, Ann Lloyd Phillips transferred the proceeds of the sale of the [p]roperty to the Trust on or about May 18, 1998." Ann Lloyd Phillips benefited personally from her violation of her agreement with plaintiff by living in the property from March 1975 through April 28, 1998 without paying any of the above-referenced obligations, and then after April 28, 1998, personally benefited from payments to the Trust made to her and for her benefit. (Dkt.# 1, ¶¶ 4–18).

15. This Court does not disagree that plaintiff's contention that his claim for unjust enrichment is asserted against the Trust that plaintiff's mother created "and which at no cost to itself[,] benefited at his expense." (Dkt. # 30, Brief at 11). That notwithstanding, the facts upon which plaintiff relies to support this contention are not pled in his Complaint.

16. Plaintiff has not asserted a claim for fraud in his pleading; accordingly, such claim will not be addressed. See note 24 infra.

and did not disclose it to plaintiff;[17] and that the administration of the Trust, which since its formation in 1998 has been made up predominantly of "movables," has, since June 1998 been in Connecticut, not California—such facts are not alleged in his Complaint. (*See* Dkt. # 30, Brief at 9 & 11–12; Dkt. # 1). Accordingly, the gravamen of plaintiff's Complaint is that plaintiff entered into an oral agreement with his mother, a California resident, concerning his acquisition of an interest in the LaCanada, California property, which agreement plaintiff contends his mother breached when she sold the property and transferred the proceeds she received from its sale into the Trust, which was created in California and which continues to benefit from the breach.

▮ As the parties agree, the "most significant relationship" test of the Restatement (Second) of Conflicts of Laws applies to this claim. *See Reichhold Chem., Inc. v. Hartford Accident & Indem. Co.*, 243 Conn. 401, 703 A.2d 1132 (1997). Under such test, the substantive law of the state with the most significant relationship to the transaction and to the parties will be applied. *See* Restatement (Second) Conflict of Laws § 188 (contracts); § 221 (restitution)(1971). Connecticut has adopted the "general presumption" of § 188 [18] which provides that "unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting

transactions took place should be applied." *See Reichhold,* 243 Conn. at 414, 703 A.2d 1132. In a case sounding in restitution, the contacts to be taken into account include:

(a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,

(b) the place where the benefit or enrichment was received,

(c) the place where the act conferring the benefit or enrichment was done,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) Conflict of Law § 221 (1971).

▮ While plaintiff correctly observes that the "enrichment the Trust received did not take place until [Ann Phillips] refused to honor her agreement with plaintiff," (*see* Dkt. # 30, Brief at 11), according to plaintiff's Complaint, the agreement was to pay plaintiff the proceeds of the sale of the LaCanada property which plaintiff refused to honor when she created the Trust, into which she transferred such proceeds, thereby enriching the Trust from that mo-

---

17. To the extent plaintiff claims that defendant failed to inform plaintiff of his mother's plans, plaintiff fails to offer any support for this claim or for the obligation of defendant to do so prior to Ann Phillips death.

18. In a contract dispute, the "contacts to be taken into account" are:
   (a) the place of contracting,
   (b) the place of negotiation of the contract,
   (c) the place of performance,

(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement (Second) Conflict of Laws § 188 (1971).

ment forward.[19] As stated above, plaintiff, a resident of Ohio, entered into an oral agreement in 1974 with his mother and father, residents of California, concerning property they occupied as their home in LaCanada, California. (Plaintiff's Depo. at 10). In 1975, Ann Phillips executed a deed in California, making plaintiff a joint tenant with her in the LaCanada property, which interest plaintiff deeded back in California, in December 1978. (Defendant's Statement ¶ 4; Plaintiff's Statement ¶ 4; Plaintiff's Depo. at 11, 14–15; *see* Quit-claim Deed). The subject matter of the contract, namely, the LaCanada property, was located in California and the "bulk" of the "contracting transactions" took place in California. Moreover, the breach of the oral agreement occurred in California when Ann Phillips, who had created a Trust in California, sold her residence and transferred the sale proceeds into this Trust.[20] It was not until after the Trust allegedly was unjustly enriched with the sale proceeds that Ann Phillips moved to Connecticut. Accordingly, defendant correctly observes that whether the choice of law question is resolved under § 188, governing contracts, or under § 221, governing restitution, California substantive law applies as the bulk of the contracting transactions took place in California, the relationship between plaintiff and his mother, regarding the oral agreement, was centered around the LaCanada property, the Trust received the sale proceeds, or the benefit, while in California, and the

property from which the proceeds were derived was located in California.

## B. WHEN PLAINTIFF'S CLAIM ACCRUED

■ As defendant correctly acknowledges, the threshold issue in determining the timeliness of plaintiff's claims under either California or Connecticut law,[21] is determining when plaintiff's claim accrued. (*See* Dkt. # 19, Brief at 20). Defendant urges that the claim is governed by the two year statute of limitations period contained in the California Code of Civil Procedure § 339, though she acknowledges that the claim would still be barred if Connecticut's six year statute of limitations period applies, as the sale of the property occurred in April 1998 and plaintiff knew of the breach of his oral agreement with his mother no later than May 2, 1998. (Dkt. # 19, Brief at 21–23).

Plaintiff responds that regardless of when such claim accrued, plaintiff's claim is "uniquely" appropriate for equitable relief as plaintiff's conduct was reasonable under the circumstances, "[g]iven the relationships involved here between a son and mother," and because the benefit the Trust received was unjust; thus, plaintiff contends, there is no statute of limitations barring this claim in Connecticut. (Dkt. # 30, Brief at 14–18). That notwithstanding, plaintiff posits that "the earliest date on which plaintiff reasonably could have known that his mother actually repudiated

19. The fact that plaintiff did not learn that his mother did not set aside the proceeds for him in the Trust until he received the Notice on August 22, 2003, does not change the fact that the agreement was already breached when the proceeds were transferred into the Trust and the Trust was unjustly enriched from that day forward. *See* Section II.B. *infra* & note 24 *infra*.

20. As plaintiff explicitly stated, "[i] t was not until Ann Phillips took the proceeds from the sale of the LaCanada property which should have been plaintiff's, placed them instead into the Trust 20 days after the sale ..., and refused to pay them over to plaintiff that the enrichment the Trust received became 'unjust.' ". (Dkt. # 30, Brief at 11). All of this took place in California.

21. *See* note 25 *infra*.

their agreement was August 22, 2003 when he received the Notice...." (Dkt. # 30, Brief at 17, n. 10).

In her reply brief, defendant asserts that what plaintiff learned on August 22, 2003 was "wholly consistent" with what Ann Phillips told him on May 2, 1998; plaintiff's arguments that subsequent to May 2, 1998, Ann Phillips made statements to plaintiff that amount to fraudulent misrepresentations, are not consistent with allegations asserted in plaintiff's Complaint; plaintiff's attempts to bolster his claim through the use of inadmissible hearsay of a non-party decedent; and although plaintiff claims that after he had communications with counsel in California in 1998, he determined that he did not need to bring an action against his mother at that time, plaintiff's counsel, at his deposition, refused inquiry into plaintiff's interactions with this lawyer but now seeks to rely on such advice to avoid summary judgment. (Dkt. # 33, at 3-5).

Plaintiff's claim for unjust enrichment of the Trust occurred when plaintiff's mother breached the oral agreement by funding the Trust with the proceeds from the sale of the LaCanada property rather than turning such proceeds over to plaintiff. Plaintiff testified at his deposition that beginning in September 1997, he and his mother began to have conversations in which his mother told plaintiff that she was interested in selling the LaCanada property and moving to Connecticut to live with her daughter, defendant Marilyn

Scott, and her family. (Plaintiff's Depo. at 23-24). At that time, plaintiff told his mother that he would assume the cost of "fix[ing] up, repair[ing], and restor[ing] the property," and then selling it, if she would transfer the title to him.[22] (Plaintiff's Depo. at 23). However, on May 2, 1998, plaintiff learned in a telephone conversation with his mother, that lasted about "an hour and a half," that the LaCanada property had been sold in late April 1998. (Plaintiff's Depo. at 24-25, 78; see 1998 Deed). Plaintiff further testified that during this conversation, he told his mother that he required her to honor their agreement by paying him the sale proceeds of the LaCanada property, but his mother informed him that she would not pay him because she needed the money to live, but she might, at some unspecified time in the future, pay him some small portion of those proceeds. (Plaintiff's Depo. at 25-26, 34, 77-78). Plaintiff also learned that his mother placed the sale proceeds in a trust that she had created and according to plaintiff, his mother told him that she would return the funds from the LaCanada sale "by ... keeping them safe in the [T]rust." (Plaintiff's Depo. at 34). Plaintiff expected that his mother set up the Trust so that the sale proceeds would be "set aside basically in [his] name." (Id.).[23] According to plaintiff, "upon receiving a copy of the [T]rust, ... [he] fully expected" his mother to "honor" their agreement. (Plaintiff's Depo. at 35). The Notice plaintiff received on August 22,

---

22. According to plaintiff, the house sold for substantially below market value at $550,000, as opposed to "anywhere between [$]800,000 and a million" because of needed repairs. (See Plaintiff's Depo. at 23-25, 74-75). Plaintiff expected that his mother would remit to him the $550,000, starting with one-half, or $272,500. (See Plaintiff's Depo. at 79).

Plaintiff also contends that the fact the his mother moved her furniture out of the house

was a "breach of [their] oral agreement." (Plaintiff's Depo. at 77).

23. Plaintiff also testified that in this and subsequent conversations between plaintiff and his mother, she told him that she could not return his investment to him at the time because she needed to live on the proceeds. (Plaintiff's Depo. at 34, 36, 41, 42, 77, 83).

2003, however, revealed that a spendthrift provision existed for plaintiff whereby:

A. The Trustee may pay to or apply for the benefit of the beneficiary as much of the net income and principal of the trust as the Trustee considers necessary for the beneficiary's health, education, support, and maintenance, after considering any other income or resources of the beneficiary known to the Trustee. Any undistributed net income shall be accumulated and added to principal.

B. Such trust shall continue until the death of [plaintiff], at which time the trust shall terminate and the Trustee shall distribute all of the remainder of the trust corpus two-third (2/3) to [defendant], and one third (1/3) in equal shares among the living children of [defendant]. . . .

. . .

(Dkt.# 1, Exh. C, § 4.05).

■ The foregoing establishes that during his telephone conversation on May 2, 1998, plaintiff learned of the breach of the oral agreement and the transfer of such sale proceeds into the Trust, which, according to plaintiff, has been unjustly enriched. Although plaintiff thereafter testified that it was not until he received the Notice, on August 22, 2003, that his expectations relating to the Trust were relinquished, as the Notice made clear that the sale proceeds were not "set aside basically in [his] name," and that contrary to his expectations, his mother did not "honor" their agreement, plaintiff's pleading plainly states that his mother breached their agreement, thereby unjustly enriching the Trust, when she sold the property and transferred the proceeds into the Trust, which plaintiff testified he learned during the May 2, 1998 telephone conversation. (Plaintiff's Depo. at 34–35; Dkt. # 1, ¶ 22). Thus, even viewing the foregoing in the "light most favorable to the party opposing the motion," the time at which plaintiff's claim accrued was May 2, 1998.[24] *Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598 (internal quotation & citation omitted).

## C. STATUTE OF LIMITATIONS [25]

■ As stated above, defendant posits that plaintiff's unjust enrichment claim

---

**24.** Although plaintiff repeatedly testified about his May 2, 1998 telephone conversation with his mother in which conversation plaintiff learned that his mother breached their oral agreement and transferred the sale proceeds into the Trust, plaintiff also testified that, despite this information, he still expected that his mother would "honor" their agreement and set aside the proceeds for him in the Trust. Plaintiff's description of events from May 1998 to the August 22, 2003 Notice, despite any expectation he otherwise held, demonstrate that the Notice confirmed the information he received in May 1998. Moreover, in contrast to some of plaintiff's testimony, plaintiff has pled that his claim for unjust enrichment arose when his mother "breached the agreement . . . when she sold the [p]roperty and thereafter transferred the proceeds she received from the sale into the Trust," and plaintiff also testified that he learned that his mother sold the LaCanada property on May 2, 1998. (Dkt. # 1, ¶ 22; Plaintiff's Depo. at 24–25, 78).

Additionally, as further discussed in Section II.C. *infra,* to the extent plaintiff attempts to assert that based on his May 2,1998 conversation during which Ann Phillips engaged in fraudulent misrepresentations upon which plaintiff reasonably relied in delaying action on the alleged agreement, such claim for fraud was not pled under the stringent standard set forth in Fed.R.Civ.P. 9(b), and thus may not be asserted for the first time at the summary judgment stage.

**25.** While this Court has concluded that the substantive law of California governs plaintiff's claims, as stated in Section II.A. *supra,* a question remains under the conflicts of laws analysis as to what state's statute of limitations law applies. As the United States Supreme Court has instructed, "[u]nder traditional choice of law principles, the law of the

is untimely under California law as the applicable statute of limitations depends on the underlying claim, which according to defendant is either one for unjust enrichment seeking disgorgement, or one seeking the imposition of a constructive trust[26] on the sale proceeds, either of which is governed by a two year limitation period contained in California Code of Civil Procedure § 339. (Dkt. # 19, Brief at 22). Plaintiff counters that his action for unjust enrichment in California is governed by the three year statute of limitations set out in CAL. CIV.CODE § 338(d), which governs actions on grounds of fraud or mistake. (Dkt. # 30, Brief at 18–19). According to plaintiff, he could not have known until his mother's death that she was not returning plaintiff's investment outright, and thus he was not in a position to know that his mother had breached their oral agreement.[27] (Dkt. # 30, Brief at 20).

forum State governs on matters of procedure." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778, n. 10, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), *citing* Restatement (Second) Conflicts of Laws § 122 (1971). Under Connecticut law, "[a] statute of limitations is generally considered to be procedural...." *Moore v. McNamara*, 201 Conn. 16, 22, 513 A.2d 660 (1986) (citations & internal quotations omitted). This, however, is not the end of the inquiry. As Comment e. of the notes to § 122 of the Restatement (Second) of Conflicts of Laws provides, the "emerging trend" is for courts to "select the state whose law will be applied to the issue of limitations by a process essentially similar to that used in the case of other issues of choice of law." Connecticut courts have turned to § 142 of the Restatement (Second) of Conflicts of Laws which outlines a test similar to the most significant relationship test addressed above. *See, e.g., Advest, Inc. v. Wachtel*, 235 Conn. 559, 668 A.2d 367 (1995). Specifically § 142 reads:

Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6 [governing choice-of-law principles]. In general, unless the exceptional circumstances of the case make such a result unreasonable:
(1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest in the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.
Under such test, for the reasons stated in Section II.A. *supra*, the statute of limitations governing plaintiff's claim under California law would apply. Although California's governing statute of limitations is substantially shorter than the applicable statute of limitations in Connecticut, *see* CONN. GEN.STAT. § 52–576, even if Connecticut's six year statute of limitations were applied, plaintiff's claim would still be barred as his claim, as further stated in Section II.B. *supra*, accrued on May 2, 1998 and he did not initiate the current action until December 1, 2004.

The foregoing notwithstanding, in light of the decision reached in Section II.A. *supra*, further analysis of the application of Connecticut law need not be addressed.

26. A constructive trust arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Gonzales v. California*, 68 Cal.App.3d 621, 628, 137 Cal. Rptr. 681 (Cal.Ct.App.1977) (citation omitted). Thus, when one acquires proceeds from the sale of property belonging to another, an imposition of a constructive trust on the proceeds is a proper remedy. *See* CAL. CIV.CODE § 2224 (1987).

Plaintiff asserts that "[t]his is not an action for the imposition of a constructive trust" but then adds that the imposition of a constructive trust is only one of the various forms of relief he seeks in his action to recover against the Trust for its unjust enrichment. (Dkt. # 30, Brief at 15–16). Plaintiff also seeks restoration of the proceeds of the sale of the LaCanada home by way of disgorgement. (*See* Dkt. # 30, Brief at 16).

27. As previously stated, plaintiff has not pled a claim for fraud. Moreover, plaintiff's argument is contrary to the claim set out in his pleading in which he stated that the agree-

■ Under California law, the statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded. *See Embarcadero Mun. Improvement Dist. v. County of Santa Barbara*, 88 Cal.App.4th 781, 789, 107 Cal. Rptr.2d 6 (Cal.Ct.App.2001)(multiple citations omitted). As stated above, the gravamen of plaintiff's Complaint is that plaintiff entered into an oral agreement with his mother, a California resident, concerning his acquisition of an interest in the LaCanada, California property, which agreement plaintiff contends his mother breached when she sold the property and transferred the proceeds she received from its sale into the Trust, which continues to benefit from the breach. Plaintiff's unjust enrichment claim is based upon an equitable obligation imposed by law and which claim has resulted from the breach of an oral agreement.

Section 338(d) provides for a three year statute of limitations on actions "for relief on the ground of fraud or mistake" and the "cause of action . . . is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." This statutory provision, accordingly, does not apply to this case as plaintiff does not assert a claim based on fraud or mistake in his Complaint and plaintiff's pleading does not satisfy the standards set forth in FED.R.CIV.P. 9(b) which requires that "all averments of fraud or mistake" must be stated with "particularity." (*See* Dkt. # 33, at 7).[28]

Rather, plaintiff's claim for a breach of an oral agreement with his mother, the result of which was an unjust enrichment of the Trust, is governed by Section 339 of the California Code of Civil Procedure. Section 339(1) governs "[a]n action upon a contract, obligation or liability not founded upon an instrument in writing . . .," whereas, Section 339(3) covers "[a]n action based upon the rescission of a contract not in writing." Accordingly, plaintiff's claim is governed by the two year statute of limitations set forth in CAL. CIVIL CODE § 339, which limitations period bars plaintiff's claim.

■ Defendant also contends that plaintiff's claim is untimely under the California Probate Code § 16061.7 which requires that heirs and beneficiaries of a trust settlor whose trust became irrevocable upon death, be given notice of the fact and be warned explicitly that they have one hundred twenty days from the date on which they receive this notice to bring an action. (Dkt. # 19, Brief at 23–25). Plaintiff received notice on August 22, 2003 and had until December 2003 to initiate an action contesting the Trust, but did not do so.

Plaintiff argues that defendant's reliance on Section 16061.7 is misplaced as plaintiff is not contesting his mother's capacity to execute the Trust documents itself or raising a claim of "undue influence," so that this Court must construe the contest provision in the Notice narrowly and not as an over-all challenge to the disposition of the Trust's assets. (Dkt. # 30, Brief at 21, n. 12).

The Notice that plaintiff received on August 22, 2003 included the following language, in capital letters and bold print:

**WARNING**

**YOU MAY NOT BRING AN ACTION TO CONTEST THE TRUST MORE**

---

ment was "breached" when his mother "sold the [p]roperty and thereafter transferred the proceeds she received from its sale into the Trust." (Dkt.# 1, ¶ 22). *See* note 24 *supra*.

28. Accordingly, plaintiff has not alleged any set of facts in Count One of his Complaint that would toll the statute of limitations.

**THAN 120 DAYS FROM THE DATE THIS NOTIFICATION BY THE TRUSTEE IS SERVED UPON YOU OR 60 DAYS FROM THE DAY ON WHICH A COPY OF THE TERMS OF THE TRUST IS MAILED OR PERSONALLY DELIVERED TO YOU IN RESPONSE TO YOUR REQUEST DURING THAT 120–DAY PERIOD, WHICHEVER IS LATER.**

(Dkt.# 1, Exh. B).

Plaintiff erroneously asserts that the foregoing notice required by Section 16061.7 serves to notify beneficiaries who "challenge the gifting capacity of the donor . . .," and because plaintiff is not challenging his mother's capacity, such provision does not apply in this case. (Dkt. # 30, Brief at 21, n. 12). Section 16061.7 is not as restrictive as plaintiff contends but rather requires the above-referenced notice to be served on the beneficiaries and heirs "[w]hen a revocable trust or any portion thereof becomes irrevocable because of the death of one or more of the settlors of the trust," and "[w]henever there is a change of trustee of an irrevocable trust. . . ." CAL. PROB.CODE § 16061.7(a)-(b). Moreover, although plaintiff posits that "this Court must construe the 'contest' in the Notice in the narrow, technical legal sense of a challenge based on issues such as 'undue influence, competency, etc.,'" (Dkt. # 30, Brief at 21, n. 12), the term "contest" as defined by the California Probate Code includes both "direct and indirect contests." [29] CAL. PROB.CODE § 21300(a). A "direct contest" means a pleading in a proceeding in any court alleging the invalidity of an instrument or its terms on grounds of revocation, lack of capacity, fraud, misrepresentation, menace, duress, undue influence, mistake, lack of due execution, and forgery. CAL. PROB.CODE § 21300(b). An "indirect contest" means a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms based on any ground not contained in the direct contest provision and that does not contain any of those grounds listed above. CAL. PROB.CODE § 21300(c). Thus, plaintiff's reliance on the definition of a direct contest in support of his urgency that the § 16061.7 does not apply is done at the exclusion of the applicability of an indirect contest to this case. Moreover, the term "contest" has been defined under California law as "an attack in a proceeding on an instrument or on a provision in an instrument." *Scharlin v. Superior Court of Orange County,* 9 Cal.App.4th 162, 168, 11 Cal.Rptr.2d 448 (Cal.Ct.App.1992) (citation & internal quotations omitted).[30]

---

**29.** The term "contest" is defined as "any action identified in a 'no contest clause' as a violation of the clause." *See* CAL. PROB.CODE § 21300(a).

**30.** Plaintiff's contention that "this Court must construe the word 'contest'" in the Notice in a "narrow, technical legal sense of a challenge based on issues such as 'undue influence, competency, etc.,'" (Dkt. # 30, Brief at 21, n. 12), is misplaced as California courts have found that the term "contest" is used in the "technical sense" when used in a will prepared by an attorney; such definition does not apply to "contest" as used in the California Probate Code. *See Varney v. Superior Court of Orange County,* 10 Cal.App.4th 1092, 1107, 12 Cal.Rptr.2d 865 (Cal.Ct.App.1992) (citation omitted); *Nairne v. Jessop–Humblet,* 101 Cal.App.4th 1124, 1131, 124 Cal.Rptr.2d 726 (Cal.Ct.App.2002)(multiple citations omitted).

Plaintiff's case draws distinct similarities to *Nairne,* 101 Cal.App.4th at 1126, 124 Cal. Rptr.2d 726, in which case the plaintiff claimed that his mother, the defendant, and her husband orally agreed to give certain property to him and therefore that property should not have been included in the trust. The plaintiff in that case sought to "establish and enforce an oral contract that was based on a right independent of the trust," so that the plaintiff argued that his complaint would

Plaintiff explicitly clarifies that he is "not suing his mother for breach of contract," (Dkt. # 30, Brief at 9, n. 6), "[r]athe[r], it is an action to recover against the Trust...." (*Id.* at 15; *see also id.* at 16 & n. 9). As discussed in Section II.B. *supra*, plaintiff testified that even after he learned that his mother breached their oral agreement, plaintiff still expected that she would "honor" the terms of the agreement by setting an amount equivalent to the sale proceeds in the Trust. Plaintiff further testified, however, that when he received the Notice and a copy of the Trust, he learned that his expectations were not met and that his mother set aside a spendthrift provision for plaintiff rather than setting aside the anticipated amount of money. Plaintiff, therefore, brought this action to challenge the unjust enrichment of the Trust. Plaintiff's cause of action for a breach of the oral contract, which he claims he is not asserting here, arose when he discovered his mother's breach during the May 2, 1998 telephone conversation. His unjust enrichment claim, as stated above, accrued at the same time as that was when the proceeds entered the Trust. By suing the Trustee for an unjust enrichment of the Trust, plaintiff is challenging the benefit conferred upon the Trust, the appreciation or knowledge by the Trustee of the Trust's benefit at plaintiff's expense, and the acceptance or retention of the sale proceeds by the Trust.[31] This challenge is made, therefore, to the Trust which plaintiff alleges has retained the sale proceeds which in justice and equity belonged to him. Accordingly, in this case, plaintiff is "attacking" his mother's Trust to the extent that the res of the Trust is funded, *inter alia,* by the proceeds of the sale of the LaCanada property, to which proceeds plaintiff contends he was entitled under the terms of the oral contract which his mother breached, thereby unjustly enriching the Trust. *Scharlin,* 9 Cal.App.4th at 168, 11 Cal.Rptr.2d 448 (citation omitted).

Plaintiff received the Notice on August 22, 2003 but failed to initiate this action until December 1, 2004. Accordingly, plaintiff's claim is barred by Section 16061.7 of the California Probate Code. *See Varney v. Superior Court of Orange County,* 10 Cal.App.4th 1092, 1107, 12 Cal. Rptr.2d 865 (Cal.Ct.App.1992)(plaintiff sought to recover specific property under an alleged contract; unlike the plaintiff in this case, he was not seeking to impose a constructive trust, nor was he attempting to achieve a result contrary to the will, and thus he was not "contesting" the provisions of the will).[32]

## III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment (Dkt.# 19) as to Count One of the Com-

---

not constitute a "contest" within the meaning of the "no contest" provision of the trust. *Nairne,* 101 Cal.App.4th at 1129, 124 Cal. Rptr.2d 726. It is not clear why plaintiff in this case relies on *Nairne* as plaintiff has strenuously insisted throughout his brief that the gravamen of his claim is not an oral contract which his mother breached when she sold the LaCanada property. Moreover, the court in *Nairne* concluded that in light of a broadly written no contest clause and the specific reference in the trust of the property that was the subject of the oral contract, the plaintiff's complaint constituted an impermissible "contest" to the trust. 101 Cal.App.4th at 1131, 124 Cal.Rptr.2d 726.

**31.** *See* note 13 *supra.*

**32.** In light of the conclusion reached in Sections II.A–C. *supra,* the Court need not address the application of the doctrine of laches. (*See* Dkt. # 19, Brief at 25, 28–30; Dkt. # 30, Brief at 22–23; Dkt. # 33, at 9–10).

plaint is *granted.*[33]

**33.** Counsel shall contact Chambers to sched-
ule a telephonic status conference to address
plaintiff's remaining claim for an accounting
under Count Two. *See* note 6 *supra.*