[No. G012203. Fourth Dist., Div. Three. Aug. 31, 1992.]

JOSEPH SCHARLIN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JACQUELINE BROWN, Real Party in Interest.

**COUNSEL**

Bakst & Garber, Leslie J. Garber and Martin S. Bakst for Petitioner.

No appearance for Respondent.

Westover & Matthews and Alyssa C. Westover for Real Party in Interest.

**OPINION**

MOORE, J.—Joseph Scharlin filed a petition for a writ of mandate seeking to vacate respondent superior court's order finding his proposed challenge to the validity of an amendment to a trust would violate the no contest clauses of both the original trust agreement and the amendment. We issued an alternative writ and granted a hearing to determine whether a beneficiary under the decedent's trust of a joint estate plan forfeits his or her interest by challenging the validity of an amendment to the survivor's trust under that estate plan. We conclude the writ should be granted.

FACTS

In July 1981, Max and Frances Scharlin, the parents of Joseph and real party in interest Jacqueline Brown, executed a revocable trust agreement entitled the Max Scharlin and Frances Scharlin Family Trust. Under the agreement, the Scharlins were to deposit all of their community and separate property into an inter vivos trust. The instrument provided they would receive the trust's income and any portion of the principal requested during their joint lives. Upon the death of one of the settlors, the trust estate would divide into two shares designated as the survivor's trust (Trust A) and decedent's trust (Trust B).

Trust A would contain the surviving settlor's separate property, his or her share of the community property, and the maximum allowable amount for the marital deduction under federal estate tax law. It would remain revocable. The balance of the estate would be deposited into Trust B. This trust would become irrevocable. The surviving settlor would be entitled to the income from both trusts during his or her lifetime. In addition, the surviving settlor was given a general power of appointment over Trust A.

Under the original trust agreement, upon the surviving settlor's death, Jacqueline would receive all of the settlors' personal property. The remainder of the trust estate would be equally divided between Joseph and Jacqueline.

The trust also contained the following clause: "If any beneficiary under this Trust shall, singly or in conjunction with any other person or persons, contest in any court the validity of this Trust or of a deceased Trustor's Last Will and Testament, or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its provisions or that such Will or Trust, or any of its provisions, is void, or seek otherwise to void, nullify, or set aside this Trust, or any of its provisions, then the right of that person to take, which is given to him by this Trust, shall be determined as it would have been determined had the person predeceased the execution of this Trust agreement without surviving issue. The Trustee is hereby authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature, on this Trust, or on any of its provisions."

Max died September 2, 1982. In January 1990, Frances executed a document entitled "First Amendment of Revocable Trust Agreement Established by Max Scharlin and Frances Scharlin." The amendment revoked the part of the trust relating to the distribution of Trust A after Frances died and substituted a new provision awarding Trust A's assets to Jacqueline, and in the event of her death, to the surviving issue of Joseph. The amendment also included a no contest clause stating in part, that anyone threatening or bringing a legal action "to void, or set aside this Trust, or any of its provisions or Amendments or the Last Will and Testament and/or Codicil of either surviving Trustor, or any of the provisions contained therein," would result in the person's rights under the trust being determined as if he or she had predeceased the creation of the trust without surviving issue. The remainder of the original trust agreement was confirmed and republished.

In April, Frances resigned as trustee of the family trust and Jacqueline was appointed as her successor. Frances died January 16, 1991.

Jacqueline commenced a probate action seeking an interpretation of certain provisions of the family trust. Under Probate Code section 21320,[1] Joseph sought a determination of whether a petition alleging Jacqueline obtained the amendment to Trust A by exercising duress or undue influence over Frances would constitute a contest as to Trust B, conceding it would be a contest as to Trust A. Jacqueline opposed the petition arguing the proposed challenge to the amendment would violate the no contest clauses of both the original family trust and the amendment. The superior court agreed with

---

[1]All statutory references are to the Probate Code unless otherwise specified.

Jacqueline and ruled Joseph's proposed challenge to the validity of the amendment constituted a contest as to Trust B.

DISCUSSION

I. *Absence of an Adequate Legal Remedy*

Before reaching the substantive question, we consider whether an adequate legal remedy exists. (Code Civ. Proc., § 1086.) In his petition Joseph recognizes it is unclear whether an order under section 21320 concerning a trust is directly appealable.

■ We conclude the ruling is appealable. Section 17207 states that in cases involving trusts: "An appeal may be taken from the grant or denial of any final order made under this chapter . . . ." Proceedings covered by section 17207 include petitions determining the "construction of a trust instrument," and "the existence or nonexistence of any immunity, power, privilege, duty, or right." (§ 17200, subd. (b)(1) & (2).)

Since section 21320, subdivision (a) allows a beneficiary to request the court make "a determination whether a particular motion, petition, or other act . . . would be a contest within the terms of the no contest clause," in effect the ruling amounts to a construction of the trust instrument. The order also clarifies the rights of a beneficiary in the event he or she chooses to take certain action.

However, in issuing the alternative writ, we determined an appeal was not an adequate remedy in this case for rather obvious reasons. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) Also, this case presents a novel issue and its resolution is significant to the application of no contest clauses in proceedings concerning inter vivos trusts. (*Freedman* v. *Superior Court* (1989) 214 Cal.App.3d 734, 735-736 [263 Cal.Rptr. 1]; *Anderson* v. *Superior Court* (1989) 213 Cal.App.3d 1321, 1328 [262 Cal.Rptr. 405]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 118, pp. 753-757.)

This is a case of first impression in California. Many cases exist construing no contest clauses where wills are concerned. But no case that we have found has involved an inter vivos trust created by two persons whereby one of the trusts becomes irrevocable on the first trustor's death while the other remains revocable or amendable until the second trustor dies.

II. *The No Contest Clause*

The case before us involves the scope and effect of a no contest clause in a joint estate plan. Prior cases interpreting no contest clauses involved the

estate plan of one person in a will and a challenge to a testamentary bequest. The bequest and the no contest clause were in the same instrument and came into effect at the same time, i.e., upon the testator's death. In the present case, the disposition challenged in the amendment was not adopted at the same time as the original no contest clause, but years later.

■■ ■■ Joseph argues the lower court erred by finding the no contest clauses applied to his proposed petition. He notes the original trust agreement's no contest clause does not mention "amendments" to the plan, and the mere fact the agreement allows for amendments does not support a conclusion the settlors intended to deter attacks on the validity of amendments. Furthermore, he claims the no contest provision is at least ambiguous and thus should be construed in his favor and against a forfeiture. As for the amendment's no contest provision, he argues it is inapplicable since the amendment only made changes to the Trust A, leaving the balance of the original agreement unchanged.

Jacqueline claims the proposed petition violates the no contest clauses of both the original trust agreement and the amendment because it attacks the survivor's power to amend or revoke as contained in the original trust agreement. She further argues that the proposed petition violates the amendment's no contest provision which purports to apply to attacks against the original trust.

■ "The interpretation of a written instrument, including a . . . declaration of trust, presents a question of law unless interpretation turns on the competence or credibility of extrinsic evidence or a conflict therein. Accordingly, a reviewing court is not bound by the lower court's interpretation but must independently construe the instrument at issue. [Citations.]" (*Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1173 [241 Cal.Rptr. 330]. See also *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) There was no extrinsic evidence presented in this case.

■ In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it. (*California First Bank* v. *Townsend* (1981) 124 Cal.App.3d 922, 930 [177 Cal.Rptr. 723].) Ordinary words must be given their normal, popular meaning and legal terms are presumed to be used in their legal sense. (*Poag* v. *Winston, supra,* 195 Cal.App.3d at p. 1173.)

A contest is defined as "an attack in a proceeding on an instrument or on a provision in an instrument." (§ 21300, subd. (a).) A no contest clause is enforceable, but will be strictly construed. (§§ 21303, 21304.) ■ It has

long been the rule in this state that no contest clauses in a will are not to be extended "beyond what was plainly the testator's intent." (*Estate of Bergland* (1919) 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363].) There is no reason why this same rule should not be applied to inter vivos trusts. (See *Estate of Lindstrom* (1987) 191 Cal.App.3d 375 [236 Cal.Rptr. 376].) "[S]uch clauses must be strictly construed [citation], and no wider scope is to be given to their language than is plainly required [citations]. Only where an act comes strictly within the express terms of the forfeiture clause may a breach thereof be declared. [Citations.]" (*Estate of Basore* (1971) 19 Cal.App.3d 623, 630 [96 Cal.Rptr. 874].)

 The amendment altered only one part of the original trust relating to the ultimate distribution of Trust A. It confirmed and republished the remainder of the trust agreement, including the original no contest clause. Joseph's present request is for a determination of whether his proposed attack on the amendment would trigger a forfeiture of his rights under Trust B. He concedes the proposed challenge would constitute a contest as to Trust A. Jacqueline concedes that a successful challenge to the amendment of Trust A would not operate to forfeit Joseph's rights under Trust B. But she does contend that an unsuccessful challenge to the amendment of Trust A would forfeit Joseph's rights under Trust B as well as Trust A.

Jacqueline contends that Joseph's proposed challenge is a direct attack on the surviving settlor's power to amend contained in the original trust agreement and upon the structure of the estate plan adopted by the trustors. She argues the "[s]ettlors' purpose in creating this estate plan was to take full advantage of existing tax laws (which at that time was pre-Economic Recovery Tax Act of 1981) so as to shelter the maximum amount possible from estate taxation." But Jacqueline does not explain how we are supposed to know this was the settlors' purpose. No evidence was introduced regarding the settlors' purpose in creating the trust or in adopting any of its provisions. While most persons attempt to minimize taxes, to assume, in the absence of evidence, that that objective was the settlors' sole purpose in establishing this trust goes too far.

Furthermore, the settlors' purpose in minimizing taxes is irrelevant. Jacqueline argues that in order to qualify for the marital deduction trust provided by federal estate tax law, the lifetime income/power of appointment trust must give the surviving spouse a power of appointment over the survivor's trust assets. (26 U.S.C. § 2056(b)(5); 2 Cal. Wills & Trusts (1991) § 112.05(3), pp. 112-31 to 112-33; Ross & Moore, Cal. Practice Guide: Probate (The Rutter Group 1991) ¶¶ 10.149-10.150, pp. 10-33.1 to 10.34.) "The power to appoint the trust property on death of the surviving spouse

must be exercisable in all events; that is, it cannot be subject to limitations . . . ." (2 Cal. Wills & Trusts, *supra*, at § 112.05(e)(b), p. 112-33.) Without this power to appoint or amend, she contends settlors' estate plan would fail, no marital deduction would be allowed, and the settlors' intentions would be thwarted.

What Jacqueline fails to recognize, however, is that Joseph's proposed challenge is not on the surviving settlors' power to amend or revoke the surviving trust. Rather it amounts to an attack on how the amendment occurred, namely, by the alleged exercise of duress or undue influence upon the settlor. Joseph does not contend the surviving settlor lacked the right or power to amend. Rather, he argues the surviving settlor did not in fact amend the trust, and any so-called amendment was the result of duress or undue influence, not the free will of the settlor. Accordingly, we hold Joseph's proposed contest of the amendment to Trust A is not a challenge to the power to amend the surviving trust or to the general power of appointment.

■ Jacqueline next contends the amendment to Trust A contained a no contest clause providing that anyone threatening or bringing a legal action challenging the trust or *any amendment* to the trust would result in a forfeiture of that person's rights to recover under Trust B. Therefore, even if the original trust's no contest clause does not cover a contest of an amendment, Jacqueline urges the amendment's no contest clause clearly does so and would bar Joseph's recovery of any property under Trust B if he unsuccessfully contests the validity of the amendment to Trust A.[2]

Jacqueline's argument overlooks one critical point. The no contest provision in the original trust made no mention of amendments to the trust or that any contest or challenge to any amendment would result in a forfeiture. It is clear from the agreement that, while Frances had the right to amend the provisions of Trust A, she had no right to amend or revoke or otherwise change any of the provisions, including the no contest clause, of the original trust agreement as to Trust B. This means Frances could not amend any of the provisions of the no contest clause of the original trust insofar as it applied to Trust B. She could neither enlarge upon nor diminish the rights or penalty provisions under the original no contest provisions. To the extent, therefore, that Jacqueline argues the amendment's no contest clause controls,

---

[2]The fact the surviving trustor amended the no contest provision as to Trust A is some indication that the trustor knew the original no contest provision did not nor was it intended to cover amendments.

she is in error. ██ ██ As to Trust B, the clause in the original trust agreement controls.[3]

## DISPOSITION

We conclude Joseph's proposed petition attacking the amendment to Trust A on the grounds it was obtained by duress or undue influence, even if unsuccessful, does not constitute a contest as to Trust B. The alternative writ is dissolved and the petition is granted. The superior court is directed to vacate its original order finding the proposed petition is a contest and to enter a new order holding the petition is not a contest as to Trust B.

Crosby, Acting P. J., and Sonenshine, J., concurred.

---

[3]For this reason, *Estate of Hite* (1909) 155 Cal. 436 [101 P. 443], is inapplicable. In *Hite*, the testator made a will containing a no contest clause and later executed two codicils altering certain legacies. While the codicils did not contain no contest clauses, each reaffirmed and republished the original will except as to the legacies modified by it. The Supreme Court rejected a claim the no contest clause applied only to attacks on the will itself and not the codicils because the codicils expressly reaffirmed the will except as modified. (*Id.* at pp. 446-447.)

But a will and a codicil to it are both revocable and subject to amendment until the testator dies, at which time they simultaneously become effective. Here, a part of the trust became irrevocable upon Max's death and a part of it remained revocable and amendable until Frances died. While Frances could make changes to Trust A, she could not do the same as to Trust B.