[No. A116959. First Dist., Div. Two. May 6, 2008.]

STEPHEN MEYER, Plaintiff and Appellant, v.
HERBERT G. MEYER, as Trustee, etc., Defendant and Respondent.

984

COUNSEL

Evans, Latham & Campisi, Thomas W. Latham and Andrew Zabronsky for Plaintiff and Appellant.

Thelen Reid Brown Raysman & Steiner, John Richard Foote, Jon David Hill, Matthew Andrew Richards; Hubbard & Hubbard and Donald Gilbert Hubbard for Defendant and Respondent.

OPINION

KLINE, P. J.—

## INTRODUCTION

Petitioner and appellant Stephen Meyer appeals an order of the San Francisco Superior Court denying his petition to declare that a "Petition for Information"[1] he proposes to bring against his father, objector and respondent Herbert G. Meyer, as the sole surviving trustee of the Edie Westphal Herold Testamentary Trust (Trust), would not amount to a will contest. (Prob. Code,[2] § 21320.)[3]

Appellant contends that the trial court erred in determining that (1) the Trust (specifically the third decree of distribution regarding the ranch property) is subject to the no contest clause contained in the decedent's will (Will); (2) the Petition for Information would trigger the no contest clause; and (3) public policy does not render the no contest clause unenforceable under the circumstances. We agree with appellant that the trial court erred in concluding that the no contest clause of the Will was incorporated by reference into the third decree of distribution. Therefore, we shall reverse the order denying appellant's safe harbor motion.

## FACTS

Edie Westphal Herold died in February 1949, and her Will and codicil were admitted to probate on February 25, 1949.[4] Herold Westphal, George H. Meyer, and respondent Herbert G. Meyer were appointed executors of the Will. The Will consists of 11 articles governing the administration of the probate estate and the distribution of its assets. Article sixth of the Will provides for distribution of the residue of the probate estate "to Herold Westphal, George H. Meyer, and Herbert G. Meyer, in trust, however, for the uses and purposes as follows . . . ." There follow approximately eight pages

---

[1] "Petition for Information" refers to the "Petition for Order Compelling Trustee To Provide Information to Beneficiary."

[2] All statutory references are to the Probate Code, unless otherwise indicated.

[3] As discussed in greater detail hereafter, under section 21320, a trust beneficiary may obtain a "safe harbor" determination as to whether a particular motion, petition, or other action would be a contest within the terms of the no contest clause in an instrument. (*Colburn v. Northern Trust Co.* (2007) 151 Cal.App.4th 439, 446, fn. 4 [59 Cal.Rptr.3d 828]; *Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1199, fn. 1 [52 Cal.Rptr.3d 473].)

[4] The codicil modified the Will in three respects, two of which concerned the Trust, but the modifications are not material to the present appeal.

specifying the terms of the Trust in detail. Article sixth does *not* contain or refer to a no contest clause.

The Will contains a no contest clause in article ninth, that provides as follows: "NINTH: In the event that any one or more of the legatees, devisees, or beneficiaries named in this my Last Will and Testament, or in any codicil which I may hereafter make, or any other person should object by any action or other proceeding to any of the provisions of this my Last Will and Testament, or of any such codicil, or should attempt to defeat the same, or should file any contest of this will, or of any such codicil, or of any provision of this will, or of any such codicil, such legatee, devisee, beneficiary or other person shall receive the sum of FIVE DOLLARS ($5.00) each and no more, and any and all other provision or provisions made herein for such legatee, devisee, beneficiary, or other person shall be annulled and revoked and such legatee, devisee, beneficiary or other person shall take nothing from my estate other than said sum of FIVE DOLLARS ($5.00) each."

The Trust was established under four decrees of distribution:[5] the first decree filed November 7, 1949; the second decree filed June 12, 1950; the third decree filed October 17, 1950; and the fourth or final decree filed June 8, 1953. The Trust's primary asset was the Herold Ranch, real property located in Monterey County, California. Each decree ordered that certain assets of decedent's estate be distributed to the trustees of the Trust, to be held in accordance with the terms of the Trust as specified in the decrees. Each decree specifies the same Trust terms, and the terms of the Trust are set forth in each of the decrees in terms identical to the provisions set forth in article sixth of the Will, except as modified by the codicil to the Will. It is undisputed that none of the decrees of distribution contains the no contest clause contained in the Will or any other no contest clause.

The first decree of November 7, 1949, provides that the asset distributed thereunder (a certificate of membership in and lease of a community apartment) "is subject to distribution as part of the rest, residue and remainder of said estate to HEROLD WESTPHAL, GEORGE H. MEYER and HERBERT G. MEYER as trustees *under and pursuant to the terms of the said Last Will and Testament of said decedent . . . .*" (Italics added.) Similarly, the fourth or final decree of June 8, 1953, provides "that the rest, residue and remainder of said estate is distributable to HEROLD WESTPHAL, GEORGE H. MEYER and HERBERT G. MEYER in trust *pursuant to the*

---

[5] Respondent maintains that the Trust was established by article sixth of the Will and the decrees. Appellant maintains and the court found that the Trust was established under the four decrees of distribution.

*terms of the Last Will and Testament of said decedent* as set forth in the petition on file herein and as hereinafter stated . . . ."

The third decree of October 17, 1950, distributed the ranch to the trustees "for the following uses and purposes," and also mirrors the structure and language of article sixth of the Will, modifying the language to accommodate changes made by the codicil. In its provision distributing the ranch and its restatement of the Trust provisions, the third decree does not refer to either the Will or the codicil, although recitals regarding some of the various nontrust assets or payments refer to article seventh of the Will, and distribution of some income is made "pursuant to the terms of said last will and testament of decedent . . . ." The distributive section of the third decree provides: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED" that the residue of the estate be distributed to the trustees "for the following uses and purposes, to wit," and is followed by four and one-half single-spaced pages setting forth the terms of the Trust. Thereafter, the distributive section states that the property "distributed in trust as aforesaid is as follows," followed by a description of various probate assets being distributed to the trustees, including the ranch.

All of the decrees of distribution contain the Trust provision, paragraph (f), regarding the trustees' duty to account to remainder beneficiaries as follows: "(f) Said trustees shall not at any time be required to prepare, sign or deliver to the remaindermen hereinafter named, or any of them, or to their personal representatives, as required by the provisions of Section 1065 of the Probate Code of the State of California, or any other provision of law, any inventory or inventories of any property which may come into their possession under the provisions of this ARTICLE SIXTH, or to account to said remaindermen or any of them, or to their personal representatives, for proceeds of said ranch of any kind or nature whatsoever which may accrue to said trustees and/or come into their possession, and said trustees shall not be liable to the remaindermen or any of them, or to their personal representatives, for damages or otherwise on account of any actual or alleged waste or injury to the inheritance committed or suffered by said trustees, or on account of the failure of said trustees properly to manage said ranch or to keep the buildings and fences on said ranch in repair, and no one or more of said remaindermen shall have the right to enjoin any waste or act of injury to her inheritance actually or allegedly threatened to be committed or suffered by said trustees, or to deprive said trustees of the right to use, possess, and enjoy said ranch or the rents, issues, profits, or proceeds therefrom for and during the entire period of this trust on account of any actual or alleged waste or act of injury to the inheritance, or to require said trustees to give security for the benefit of such remaindermen or any of them. The term 'waste' as used in this

sub-paragraph (f) shall mean waste of every kind or nature, including ordinary waste, voluntary waste, permissive waste and equitable waste."

## STATEMENT OF THE CASE

Respondent is the only survivor of the three initial trustees of the Trust. He is now in his 80's. The Trust will terminate upon his death. Until then, appellant asserts that respondent and one other beneficiary are entitled to the entire net income of the Trust, but no principal. Upon respondent's death, the Trust will be distributed to the remainder beneficiaries who survive him, including appellant, one of respondent's adult children.

On January 30, 2006, appellant filed a safe harbor petition seeking a determination that his proposed Petition for Information would not be a will contest. (§ 21320.) He attached an unsigned copy of the proposed Petition for Information. He asserts therein that the three trustees filed reports and accounts with the court for the period of December 21, 1949, through December 31, 1960, but then stopped. Appellant further asserts that, for more than a decade, respondent has refused to provide any financial information about the Trust to appellant, but that the trustees had employed accountants to prepare periodic financial statements for the Trust at least through 2004. Appellant alleges in the proposed Petition for Information that, without information, he cannot determine whether respondent has performed his fiduciary duties regarding the interests of the remainder beneficiaries.

Appellant's proposed Petition for Information requests an order "[c]ompelling Herbert G. Meyer, as Trustee of the Edie Westphal Herold [Testamentary] Trust, to allow Stephen H. Meyer, and his accountants, attorneys, and other representatives, to inspect and copy all periodic financial statements that have been prepared for the Trust for any period from 1995 to the present, and to provide such other information as Stephen H. Meyer may request from time to time that is reasonably necessary to enable him to enforce his rights under the Trust or to prevent or redress a breach of trust."

On December 14, 2006, following a hearing, the probate court issued an order denying the safe harbor petition. The court determined that the terms of the no contest clause of the Will were incorporated into all of the decrees of distribution by reference. "Therefore, the no-contest clause of the WILL quoted above is incorporated into the terms of the TRUST and operates as a no-contest clause with respect to the TRUST." The court also found that the proposed Petition for Information required the trustee to account to petitioner for proceeds of the ranch, contrary to the express provisions of the Trust set

forth in paragraph (f) of the decrees of distribution. Consequently, the Petition for Information would constitute a contest under the no contest clause of the Will as incorporated into the Trust. Finally, the court found that "[g]iven the very specific language of the TRUST quoted above in [paragraph (f)], any public policy there may be or may have been when the WILL was executed in favor of requiring a trustee to provide information to a remainderman is outweighed by the public policy of enabling a testator and settler of a trust to describe the provisions for a specific asset."

A timely notice of appeal followed.[6]

## DISCUSSION

### I. *Standard of Review*

The parties agree that the standard of review as to whether the proposed petition would amount to a contest within the meaning of the no contest clause is de novo (*Hearst v. Ganzi, supra*, 145 Cal.App.4th at p. 1200), as it is with respect to each of the issues of law raised on this appeal: (1) the construction of the Will and the decrees (*Estate of Norris* (1947) 78 Cal.App.2d 152, 159 [177 P.2d 299] ["[i]t is settled law that the interpretation of a document, including a will or a decree, is a question of law, and that it is the duty of an appellate court in such cases to interpret the document independent of the construction given to it by the trier of the fact, and to make a final determination in accordance with the applicable principles of law"]); (2) the construction of the no contest clause (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92], abrogation on a different point by later legislative enactment recognized by *Estate of Rossi* (2006) 138 Cal.App.4th 1325, 1339–1340 [42 Cal.Rptr.3d 244]); and (3) whether the no contest clause violates public policy (*Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 561 [50 Cal.Rptr.3d 468]).

### II. *General Principles*

#### A. *Contests and no contest clauses*

■ "The purpose of no contest clauses 'is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will.' (*Estate of Black* (1984) 160 Cal.App.3d 582, 586 [206 Cal.Rptr. 663].)[7] 'An

---

[6] This appeal is authorized by section 1304, subdivision (d), permitting appeal of the grant or denial of an order "[d]etermining whether an action constitutes a contest . . . ."

[7] A "contest" is "any action identified in a 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests." (§ 21300, subd. (a).) " 'No contest clause'

in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided therein. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument.' (*Burch v. George, supra,* 7 Cal.4th 246, 254.) Although no contest clauses are valid and favored by the public policies of discouraging litigation and giving effect to the testator's intent, they are also disfavored by the policy against forfeitures and therefore are strictly construed and may not extend beyond what plainly was the testator's intent. [Citations.] Section 21304 provides: 'In determining the intent of the transferor, a no contest clause shall be strictly construed.' ▮ Nevertheless, 'it is the testator's intentions that control, and a court "must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause." [Citation.]' (*Burch v. George,* at p. 255.)" (*Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1128–1129 [114 Cal.Rptr.2d 865]; accord, *Colburn v. Northern Trust Co., supra,* 151 Cal.App.4th 439, 447; *Hearst v. Ganzi, supra,* 145 Cal.App.4th at p. 1207.) " 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used. [Citation.]' [Citation.]" (*Hearst v. Ganzi,* at p. 1207.)

### B.   *Section 21320's safe harbor*

Section 21320 is a declaratory relief provision that states in pertinent part: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause." (§ 21320, subd. (a).)

▮ "Section 21320 provides 'a safe harbor for beneficiaries who seek a judicial determination whether a proposed legal challenge would be a contest, and that is the only issue to be decided when such an application is made. [Citation.] As a general rule, the decision about whether the beneficiary's proposed action would be a will contest may not involve a determination of the merits of the action itself . . . .' (*Estate of Davies* [(2005)] 127 Cal.App.4th [1164,] 1173 [26 Cal.Rptr.3d 239].)" (*Hearst v. Ganzi, supra,* 145 Cal.App.4th at pp. 1207–1208.)

---

means a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." (§ 21300, subd. (d).)

### III. *The Third Decree of Distribution Did Not Incorporate the No Contest Clause of the Will by Reference*

Appellant contends that the trial court erred in incorporating the no contest clause contained in the Will into the decrees of distribution regarding the Trust provisions relating to the ranch. He asserts that none of the decrees contains a no contest clause; that the third decree of distribution is the relevant decree; that it is not ambiguous; and that it does not incorporate by reference the Will or the no contest clause of the Will. We agree.

■ As our Supreme Court explained in *Estate of Callnon* (1969) 70 Cal.2d 150 [74 Cal.Rptr. 250, 449 P.2d 186], " '[t]he administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final . . . .' [Citations.] A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator. [Citations.] Once final, the decree supersedes the will [citations] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder. [Citations.]

"If the decree erroneously interprets the intention of the testator it must be attacked by appeal and not collaterally. [Citations.] If not corrected by appeal an 'erroneous decree . . . is as conclusive as a decree that contains no error.' [Citations.] It is well settled that 'where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.' [Citations.] Only if the language of the decree is 'uncertain, vague or ambiguous' [citation] may resort be had to the will to interpret but not to contradict the decree. [Citations.] However, 'if the distributive portions of the decree are free from ambiguity, . . . resort may not be had to the provisions of the will . . .' in order to create an ambiguity. (*Estate of Norris*[, *supra*,] 78 Cal.App.2d 152, 160.)" (*Estate of Callnon, supra,* 70 Cal.2d at pp. 156–157, fns. omitted; see also *Estate of Cooper* (1969) 274 Cal.App.2d 70, 75 [78 Cal.Rptr. 740]; *Estate of Buckhantz* (1958) 159 Cal.App.2d 635, 642 [324 P.2d 317].)

As recognized above, resort to the Will may be used to resolve ambiguities in the decree. (*Estate of Cooper, supra,* 274 Cal.App.2d at p. 75.) However, there is nothing here on the face of the decrees themselves to indicate there is any ambiguity in their provisions regarding whether they include a no contest clause. They simply do not contain and do not reference such a clause.

Respondent argues that whether or not the distribution decrees are ambiguous, the Will may supply omitted terms to supplement the decrees where the Will is incorporated by reference into the decrees. (*Estate of Cooper, supra,* 274 Cal.App.2d at p. 75 ["where the decree, by its own terms, incorporates it the will may be looked to for varying purposes, such as: to supply matter omitted from the decree as well as also to clarify the decree's ambiguities . . ." (citations omitted)]; *Estate of Lockhart* (1937) 21 Cal.App.2d 574, 576 [69 P.2d 1001], disapproved on other grounds in *Estate of Platt* (1942) 21 Cal.2d 343, 349 [131 P.2d 825].)

Language similar to that appearing in the first and final decrees has been held sufficient to incorporate the Will by reference into the decree of distribution and to supplement the decree with provisions omitted from the decree. (*Estate of Cooper, supra,* 274 Cal.App.2d at pp. 76–77; *Estate of Lockhart, supra,* 21 Cal.App.2d at p. 576.)

*Estate of Cooper, supra,* 274 Cal.App.2d 70, arose in the context of an order fixing an inheritance tax in the probate of a widow's estate under a joint and mutual will executed with her husband during his lifetime. The will appeared to give the widow a life estate. (*Id.* at pp. 72, 75, 78.) An order in the probate of the husband's estate affirmed an inheritance tax compromise agreement computing the tax as if the widow had received a life estate. (Had the widow taken the entire fee, no tax would have been collected in the estate of the husband, because of the widow's exemption.) However, the decree of distribution of the husband's estate appeared to distribute the property to her in fee simple absolute. The state controller sought to impose inheritance taxes upon the widow's estate as if she had received a fee simple absolute. (*Id.* at pp. 73–74.) The controversy centered on the interpretation of the distribution order in the husband's estate. (*Id.* at p. 74.) The appellate court acknowledged the rule that the distribution decree controls over contrary provisions in the will. However, it also held that the phrase in the relevant part of the distribution order of the husband's estate providing that the property was distributed " 'in pursuance of and according to the provisions of the last will of said deceased' " (*id.* at p. 76) "authorized the court . . . to look not only to the order of distribution but also to the will of [the husband] to the extent that '. . . it supplies matters which it contains but the decree omits.' (*Estate of Lockhart, supra,* 21 Cal.App.2d at page 579.)" (*Estate of Cooper,* at pp. 76–77, 78.) The appellate court concluded that the orders made in the husband's estate were not self-conflicting and that the widow thereby received a life estate. (*Id.* at p. 80.)

Here, the first decree of distribution (upon which the probate court apparently relied to incorporate the Will by reference into the third decree) and the fourth decree each contain the phrase that the distribution therein is

made to the trustees "under and pursuant to the terms of the said Last Will and Testament of said decedent." However, the first decree of distribution, distributing the certificate of membership and community apartment lease, also provides: "(Said Certificate of Membership and said Lease of said community apartment are a part of the assets of the following trust. Certain provisions of said trust have to do with the management and operation of the decedent's ranch in Monterey County. *Said trust, however, is completely set forth herein* rather than merely portions of it which have application to said Community Apartment or proceeds of sale thereof)." (Italics added.)

Thus, to the extent the statement in the recitals portion of the first decree might be relied upon to incorporate the Will to some extent, the clear statement in the distributing clause that the Trust "is completely set forth herein" establishes that no Trust provisions have been omitted and that there is no room to supplement the Trust provisions by incorporating provisions contained in the Will.

Respondent argues that, in context, the statement that the Trust "is completely set forth herein" does not conflict with the incorporation of the Will into the Trust as the statement is contained in a paragraph set off by parentheses, the purpose of which is to explain why provisions of the Trust were included in the first decree, even though they had nothing to do with the asset distributed by that decree.

We read the language in its context to mean what it says, that the Trust is completely set forth in the first decree. As the first decree distributed only the community apartment, the distributive order could have set forth "merely portions of [the trust] which have application to said Community Apartment or proceeds of sale thereof." However, it was decided to "*completely set forth*" the terms of "said trust," including provisions having to do with management and operation of decedent's ranch in Monterey County. (Italics added.) In context, the phrase "completely set forth" refers to *all* the terms of the Trust.

The fourth or final decree of June 8, 1953, does not purport to establish a trust pursuant to *all* the terms of the Will. Rather, the recital states "that the rest, residue and remainder of said estate is distributable to [the three trustees] in trust pursuant to the terms of the Last Will and Testament of said decedent *as set forth in the petition on file herein and as hereinafter stated . . . .*" (Italics added.) Thus, the recital provides that only those terms of the Will that are "set forth in the petition" and "hereinafter stated" (i.e., set forth in the fourth decree of distribution) will govern the Trust. The terms of the Will "set

forth in the petition" for settlement of the final account and for final distribution and those "hereinafter stated" are the same. They are the terms established by article sixth as modified to reflect the impact of the codicil and the terms set forth in each of the previous distributive orders. They do not include a no contest clause. Therefore, we do not find the language of the fourth decree of distribution, that the distribution to the three trustees "in trust pursuant to the terms of the Last Will and Testament of said decedent as set forth in the petition on file herein and as hereinafter stated," suffices to incorporate the no contest clause of the Will into the Trust.

The third decree distributing the ranch contains no similar phrases arguably incorporating the Will in provisions relating to the Trust or to distribution of the ranch. In distributing the residue of the estate (including the ranch) "in trust for the uses and purposes hereinafter set forth," the third decree does not reference the Will. Consequently, there is no basis for incorporating the no contest clause of the Will into the terms of the Trust governing the ranch.[8]

As one of the series of steps in administration of the decedent's estate, each decree was intended to be final as to the rights of all persons claiming an interest in the property distributed under it. (See *Estate of Callnon, supra*, 70 Cal.2d at p. 156; 3 Gold et al., Cal. Civil Practice: Probate and Trust Proceedings (2005 supp.) § 21:15, pp. 21-16 to 21-18.) Incorporation of a no contest clause into one decree by reference to the will in another decree seems doubly attenuated, and undermines the principles of res judicata and finality of decrees of distribution not challenged by direct appeal. Beneficiaries or others looking to the Trust distribution of the third decree would have no reason to suppose that provisions of the decedent's Will had been incorporated therein, much less that a no contest clause would apply. As appellant maintains, application of a no contest clause to the third decree based on a generic reference to the Will in the first decree would turn the rule of strict construction on its head, for it would mean that a beneficiary could trigger the clause and be disinherited without ever knowing the Trust had such a clause.

Despite finding provisions of the will were incorporated into the decree of distribution at issue in that case, the Court of Appeal in *Estate of Cooper,*

---

[8] References to the Will in the third decree have nothing to do with distribution of the ranch to the trustees. The first reference pertains to payment of $5,000 to Cypress Lawn Cemetery Association; the second pertains to distribution of decedent's interest in Tomb Room J; the third and fourth references are to distribution of $4,500 of income by the executors to two beneficiaries. There is no indication these references were meant to incorporate the no contest clause into the Trust over the ranch.

*supra*, 274 Cal.App.2d 70, recognized that "the better, and certainly the more customary, practice is to have the order of distribution recite in *haec verba* those provisions of the will deemed pertinent by the probate court or to incorporate provisions into the order by more specific reference." (*Id.* at p. 77.) In the instant case, as advised by *Estate of Cooper, all* of the distribution orders do "recite in *haec verba*" the Trust provisions and *none* contains or references a no contest clause.

### IV. *The No Contest Clause in the Will Does Not Unequivocally Express the Intent of the Testator to Impose a Forfeiture Against Beneficiaries Challenging Provisions of the Trust*

■ The language of the no contest clause itself persuades us that it should not be incorporated into the Trust provisions of the third decree. The no contest clause of the Will does not itself refer to contests regarding the Trust. Rather, it refers to "any contest of this will, or of any such codicil, or of any provision of this will, or of any such codicil. . . ." To constitute a violation of a no contest clause, an act must come strictly within the express terms of that clause (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 169 [11 Cal.Rptr.2d 448]) and it must appear "from these provisions [that the trustor] unequivocally intended that [the beneficiary] would forfeit the distribution provided for [the beneficiary] under the trust instrument . . . ." (*Burch v. George, supra*, 7 Cal.4th at p. 256.) "Applying the rule of strict construction . . . , a no-contest clause in decedent's *will* will not cause a forfeiture of interests in the will following an unsuccessful attack on a related *trust* instrument, unless the clause is broad enough to specifically disinherit contesting *trust* beneficiaries. [Citation.]" (Ross, Cal. Practice Guide: Probate (The Rutter Group 2007) ¶ 15:104.1, p. 15-40.13, citing *Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 383–384 [236 Cal.Rptr. 376].)

In *Estate of Lindstrom, supra*, 191 Cal.App.3d 375, the probate court declared certain trust beneficiaries had forfeited their shares of the trust pursuant to a no contest clause in the will. The appellate court affirmed in part and reversed in part, holding that the will did not modify or revoke the trust absent specific conformance with amendment and revocation provisions of the trust. (*Id.* at pp. 378, 388–389.) As relevant here, the appellate court held the trial court had erred in ruling that the no contest clause applied to the will *and* the inter vivos trust (separate documents executed at the same time), where "the language of the clause only referred to 'this will' and not to any other document." (*Id.* at p. 383.) Although extrinsic evidence was presented that the testator intended and understood that the trust was a part of her will,

the appellate court concluded the document was a separate instrument that stood on its own. (*Ibid.*) According to the Court of Appeal, "[o]f upmost importance for purposes of construing the will, the clause does not—either directly or indirectly—refer to the trust; it refers only to 'this will.' We find that language of the clause to be controlling." (*Ibid.*) In strictly construing the language of the no contest clause, the appellate court concluded that "it was error to expand the language to include the trust." (*Id.* at p. 384, fn. omitted.)

In *Scharlin v. Superior Court, supra,* 9 Cal.App.4th 162, a couple executed a revocable family trust agreement containing a no contest clause. After the husband's death, the wife amended the survivor's trust, making it more favorable to their daughter, and adding a no contest clause to the amended trust. The couple's son sought a judicial determination whether a proposed petition alleging the sister's undue influence over the mother would be a contest as to the mother's trust. The appellate court concluded that the proposed challenge did not constitute a contest to the mother's power to amend the survivor's trust, or to her general power of appointment, but was an attack on the manner in which the amendment occurred. (*Id.* at p. 170.) Applying the doctrine of strict construction to the no contest clause, the appellate court also held that the proposed challenge would not effect a forfeiture of the son's right to recover under the decedent's trust, because "[t]he no contest provision in the original trust made no mention of amendments to the trust or that any contest or challenge to any amendment would result in a forfeiture." (*Ibid.*) The court recognized that, " '[o]nly where an act comes strictly within the express terms of the forfeiture clause may a breach thereof be declared. [Citations.]' [Citation.]" (*Id.* at p. 169.)

*Scharlin* distinguished *Estate of Hite* (1909) 155 Cal. 436 [101 P. 443], in which "the testator made a will containing a no contest clause and later executed two codicils altering certain legacies. While the codicils did not contain no contest clauses, *each reaffirmed and republished the original will except as to the legacies modified by it*." (*Scharlin v. Superior Court, supra,* 9 Cal.App.4th at p. 171, fn. 3, italics added.) *Estate of Hite* rejected a claim that the no contest clause applied only to attacks on the will itself and not the codicils because in both codicils the testator "declares that he has reread, reconsidered, reordained, and republished, ratified and confirmed his will . . . ." (155 Cal. at pp. 446–447.) Nothing in the third decree or the Trust provisions of any of the decrees reaffirms or republishes the Will as it relates to the Trust.

Respondent contends that the testator's intent to include the no contest clause in the Trust is evidenced by broad powers given to the trustees in the

Trust (see Trust pars. (d), (e) & (f)) and by the noninterference provision of the Trust contained in paragraph (f), including the provisions relieving the trustees from liability for waste. Were the standard whether the testator probably intended the no contest clause to apply to the Trust provisions, we might agree. Such is not the standard. In determining the testator's intent, we must strictly construe the no contest clause as written and may not extend the clause beyond "what plainly was the testator's intent." (*Estate of Kaila, supra,* 94 Cal.App.4th 1122, 1128–1129; accord, *Colburn v. Northern Trust Co., supra,* 151 Cal.App.4th 439, 447.) We cannot say the testator "*unequivocally*" expressed her intent to apply the no contest clause in this case to actions regarding the Trust. (See *Burch v. George, supra,* 7 Cal.4th at p. 255; *Estate of Kaila,* at pp. 1128–1129.)

In contrast to the clause in the present case, the no contest clauses given effect in *Hearst v. Ganzi, supra,* 145 Cal.App.4th 1195, relied upon by respondent, and in the earlier case *Tunstall v. Wells, supra,* 144 Cal.App.4th 554, expressly applied to the trust instruments at issue and no question of incorporation by reference was involved. In *Hearst v. Ganzi,* the will included a broad no contest clause, applying to contests against " 'this my Will or any of its provisions, *including but not limited to any trust created herein or hereunder or any of the provisions of any such trust . . . .* ' " (145 Cal.App.4th at p. 1210, italics added.) In *Tunstall v. Wells,* the Court of Appeal held that the no contest clause of a family trust providing that one beneficiary's contest voids other noncontesting beneficiaries' bequests along with the contestant's did not violate public policy. (144 Cal.App.4th at pp. 558, 565.) The no contest clause was contained in the trust itself and there was no doubt as to the testator's intention. (*Id.* at pp. 558, 561.)

In the circumstances presented, we cannot conclude the testator "unequivocally" intended the no contest clause to apply to challenges to the Trust provisions.

## CONCLUSION

■ We conclude the trial court erred in finding the no contest clause of the Will was incorporated by reference into the Trust provisions of the third decree of distribution distributing the ranch.[9]

---

[9] Nothing herein should be construed as determining whether the Petition for Information is inconsistent with paragraph (f) or other provisions of the Trust set forth in the decrees of distribution, an issue we have not considered.

## DISPOSITION

The order denying appellant's safe harbor petition is reversed. The matter is remanded to the trial court for further proceedings.

Lambden, J., and Richman, J., concurred.