Filed 11/16/22  Hudson v. Hudson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DANIEL HUDSON et al., | B322589 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 18PR184315) |
| v. | |
| KENNON HUDSON, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Santa Clara County, Julie A. Emede, Judge.  Affirmed.

Hopkins & Carley, Steven A. Ellenberg and Ryan D. Cunningham for Plaintiffs and Appellants Daniel Hudson and Michael Hudson.

McManis Faulkner, James McManis and Abimael Bastid for Defendant and Respondent.

————————————

Daniel Hudson and Michael Hudson appeal from the probate court's order denying their petition to enforce the no contest clause in the 2017 Amendment and Restatement of the Robert B. Hudson Trust against their stepmother, Kennon Hudson.[1]  Daniel and Michael contend the probate court erred in finding Kennon's creditor's claim in the probate proceeding did not violate the no contest clause in the trust.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The 2017 Amendment and Restatement of the Robert B. Hudson Trust*

In 2007 Daniel and Michael's father, Robert Hudson, established the Robert B. Hudson Trust, which was amended several times, most recently on July 12, 2017.  The trust stated that, upon Robert's death, the trust assets were to be distributed mainly to Kennon, Daniel and Michael.  After $10,000 gifts to two of Robert's nephews, Kennon was to receive $350,000 cash, the contents of all bank and brokerage accounts, certain real and personal property and interests in several partnerships and corporations.  Daniel and Michael were to receive interests in various corporate entities.  In addition, certain real estate and corporate interests would be held in a qualified terminable interest property (QTIP) trust for Kennon's benefit and, upon her death, the QTIP trust property would be distributed to Daniel's and Michael's children or grandchildren.  Any remaining assets of the trust were to be divided between Daniel and Michael.

---

[1]  Because the parties share the same surname, we refer to them by their first names for clarity.

The trust contained a no contest clause, which stated, "If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly does any of the following acts, then the right of that person to take any interest given to him or her by this instrument shall be void . . . . [¶] (a) Without probable cause challenges the validity of this instrument, or the validity of any contract, . . . or other document executed by the settlor . . . . [¶] (b) Files a pleading to challenge the transfer of property under this trust or a settlor's will . . . on the grounds that it was not the transferor's property at the time of transfer; [¶] (c) Files a creditor's claim or prosecutes any action against the trust for any debt alleged to be owed to the beneficiary-claimant."

2. *The Last Will of Robert B. Hudson*

On July 12, 2017, after signing the trust amendment, Robert executed a pour-over will, bequeathing the residue of his estate to the trustee of the Robert B. Hudson Trust to be added to the trust principal and distributed in accordance with the trust provisions. The will contained a no contest clause similar to the no contest clause of the trust, including a provision that the no contest clause would apply to any beneficiary who "[f]iles a creditor's claim or prosecutes any action against my estate for any debt alleged to be owed to the beneficiary-claimant."

3. *Robert's Death and Kennon's Creditor's Claim*

Robert died on December 20, 2017. At the time of his death, the direct distributions to Kennon under the trust were estimated to be worth more than $5 million, the value of assets transferred to the QTIP trust were estimated to be approximately $15 million and the distributions to Daniel and Michael were valued at approximately $4.5 million each. Robert's share of

3

community property, valued at approximately $2 million, was held for Kennon's benefit in a different trust not subject to this dispute.

In the two months following Robert's death Kennon wrote two checks to herself for approximately $600,000 from a checking account that had become trust property. Kennon later explained the payments were reimbursements for living expenses incurred by the couple in 2017 that she had paid from her separate property. In August 2018 the trustee filed a petition seeking return of the $600,000 of trust assets from Kennon. After an evidentiary hearing the probate court ordered Kennon to return the funds to the trustee, and it appears she complied with that order.

On December 17, 2018 Kennon filed a petition for letters of special administration, which stated she was "potentially a creditor of the decedent[,] and in order to present a proper claim, a formal probate proceeding must be commenced." The probate court granted the petition and appointed the trustee as special administrator of the estate. On December 19, 2018 Kennon filed a creditor's claim against Robert's estate seeking reimbursement of the $600,000 she had expended for the couple's living expenses in 2017. In July 2019 the special administrator rejected Kennon's claim. Kennon has abandoned the claim, and it is now time-barred.

4. *The Petition To Enforce the No Contest Clauses in the Trust and the Will*

On October 18, 2019 Daniel and Michael filed a petition to enforce the no contest clauses contained in the trust and the will. They contended Kennon's creditor's claim in the probate proceeding violated the prohibition against filing a creditor's

4

claim against Robert's estate. Further, they argued, because there were no assets in the estate, a successful claim against the estate could be satisfied only by the personal representative seeking payment from the trustee of trust assets. Accordingly, Daniel and Michael argued, Kennon's claim sought funds from the trust assets and violated the trust's prohibition against filing a claim against the trust.

In her opposition Kennon argued her claim did not violate the no contest clauses because its payment would not affect the distribution of trust assets and it was Robert's intent that she be reimbursed for her payment of the couple's living expenses. Kennon submitted a declaration explaining that, during their 16-year marriage, it was the couple's practice that Kennon would pay their joint expenses and Robert would reimburse her at the end of the year. Kennon claimed she was merely acting in accordance with that practice when she wrote herself the checks after Robert's death and she had not understood all payments at that point had to be made by the trustee.

Kennon's opposition also included two documents she maintained corroborated her account that Robert annually reimbursed her for living expenses. First, Kennon filed a copy of the couple's premarital agreement, which stated Robert would pay all living expenses from his separate property funds and would not be entitled to any reimbursement from Kennon for those expenses. Second, Kennon filed a copy of a declaration signed by Robert six weeks before his death. In the declaration Robert acknowledged that Daniel believed Kennon had been improperly withdrawing funds from Robert's bank and securities accounts for more than 10 years. Robert stated he had reviewed the accounts in detail with his accountant and his attorney prior

5

to signing the declaration, and he understood there had been a significant increase in yearly withdrawals during the latter years. However, Robert declared, "I have no issue and no complaint with Kennon receiving the amounts [paid]. I wholeheartedly approve her receipt of these funds." Regarding Daniel's claim Kennon was taking advantage or stealing from Robert, Robert stated, "I wholeheartedly reject that claim. I do not want, intend or plan to pursue any such claim during my lifetime, nor do I want anyone to pursue any such claim after my death. As noted above, the sums that went to Kennon have my approval and blessing." Robert's signing of the declaration was witnessed by his attorney. Daniel and Michael objected to the filing of the premarital agreement and Robert's declaration on the ground they were inadmissible extrinsic evidence.

     5. *The Court's Order and the Appeal*

The probate court heard argument from the parties on August 19, 2020. The court found it need not consider Daniel and Michael's evidentiary objections because "the information I need to consider is contained in the trust document itself, as well as the papers that have already been filed with the Court in the estate matter."

During the hearing Kennon's counsel conceded the no contest clause in the will was violated by the filing of Kennon's creditor's claim in the probate matter but maintained that action did not trigger the no contest clause in the trust. The court agreed, stating, "I believe the no contest provision requires the creditor's claim to be made against the trust. If Ms. Hudson had proceeded with her creditor's claim, obtained a judgment, and then went against the trust, now I think we're having a very different conversation. But that is not what happened in this

6

particular case." Accordingly, the court entered an order finding Kennon had violated the no contest clause of the will but not that of the trust. Daniel and Michael filed a timely notice of appeal from the court's order.[2]

## DISCUSSION

### 1. *Governing Law and Standard of Review*

"No contest clauses, whether in wills or trusts, have long been held valid in California. [Citations.] Such clauses promote the public policies of honoring the intent of the donor and discouraging litigation by persons whose expectations are frustrated by the donative scheme of the instrument. [Citation.] [¶] In tension with these public policy interests are the policy interests of avoiding forfeitures and promoting full access of the courts to all relevant information concerning the validity and effect of a will, trust, or other instrument." (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422; see also *Burch v. George* (1994) 7 Cal.4th 246, 255.) In light of these opposing interests both the statutory and common law recognize no contest clauses must be "'strictly construed and may not extend beyond what plainly was the testator's intent.'" (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 991; see *Donkin,* at p. 422 ["the common law in California recognized the enforceability of no contest clauses, albeit strictly construed"]; *Burch,* at p. 256 ["[f]ollowing the rule of strict construction [citation], we must ascertain from these provisions whether [the trustor] unequivocally intended that [the beneficiary] would forfeit the distribution provided for her under the trust instrument"]; *Scharlin v. Superior Court* (1992)

---

[2] Pursuant to an order of the Chief Justice on August 9, 2022, this matter was transferred from the Sixth District Court of Appeal to the Second District Court of Appeal.

7

9 Cal.App.4th 162, 169 ["'[o]nly where an act comes strictly within the express terms of the forfeiture clause may a breach thereof be declared'"]; see also Prob. Code, § 21311, subd. (a) ["[a] no contest clause shall only be enforced against the following types of contests: [¶] . . . [¶]  (3) The filing of a creditor's claim or prosecution of an action based on it.  A no contest clause shall only be enforced under this paragraph if the no contest clause expressly provides for that application"].)

"""Whether there has been a 'contest' within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used."""  (*Meyer v. Meyer, supra,* 162 Cal.App.4th at p. 991.)  We review the language of the trust de novo unless its interpretation depends upon the credibility of extrinsic evidence or a conflict therein.  (*Burch v. George, supra,* 7 Cal.4th at pp. 254-255; *Key v. Tyler* (2019) 34 Cal.App.5th 505, 540.)

> 2. *The Trial Court Did Not Err in Concluding Kennon's Creditor's Claim Against the Estate Did Not Constitute a Claim Against the Trust*

As discussed, the no contest clause in the 2017 Amendment and Restatement of the Robert B. Hudson Trust applies to a beneficiary who files a creditor's claim "against the trust."  Daniel and Michael acknowledge Kennon's claim was filed only in the probate proceeding rather than directly against the trust, but argue it nonetheless triggered the clause because "the purpose and effect of the creditor's claim [was] to initiate a legal process for the recovery of trust assets."  While this may have been the purpose and effect of the creditor's claim if successful, the plain meaning of the phrase "against the trust" is not reasonably susceptible to the expansive definition proposed by Robert's sons, nor is there any indication Robert intended the provision to

8

disinherit anyone who filed a creditor's claim that had the potential to impair the trust.

This common sense interpretation of the no contest clause is reinforced by the fact that Robert, had he intended to void the trust distribution to any beneficiary who filed a creditor's claim against the estate or a claim that could ultimately be satisfied by trust assets, could have easily, and explicitly, done so. In fact, unlike the prohibition on creditor's claims, other sections of the no contest clause include language expanding their prohibitions beyond challenges to the trust itself. The paragraph prohibiting challenges to the validity of the trust states a beneficiary may not, without probable cause, challenge "the validity of this instrument, or the validity of any contract, agreement (including any trust agreement), declaration of trust, beneficiary designation, or other document executed by the settlor." The next paragraph states a beneficiary may not file a pleading to challenge the transfer of property "under this trust or a settlor's will." Robert, however, did not use similar expansive language in the paragraph concerning creditor's claims.

Daniel and Michael's reliance on the no contest clause's prohibition on a beneficiary "directly or indirectly do[ing] any of the following acts" is unavailing. They argue this language is triggered by any creditor's claim that indirectly sought the assets of the trust. However, the words "directly or indirectly" do not modify the phrase "against the trust," they modify the act of filing the claim. In other words, a beneficiary who *indirectly files* a creditor's claim against the trust, perhaps through a guardian ad litem or a corporate entity, would trigger the no contest clause. However, a claim that is *indirectly against the trust*, perhaps filed against the estate or a business entity associated

9

with the decedent, even if it may ultimately be paid by trust assets, would not trigger the no contest clause here.

Finally, Daniel and Michael argue that failing to find forfeiture here creates a loophole allowing beneficiaries to file creditor's claims against empty probate estates and then seek payment from trust assets as a way to avoid triggering the no contest clause of a decedent's trust. This argument is not compelling. First, as discussed, trust settlors can easily avoid this hypothetical result by including more expansive language in their trust documents. Second, a beneficiary who follows this procedure would still be required to seek recourse against the trust for payment of the claim. Such a demand for payment, whether made through the trust claims procedures set forth in the Probate Code (see Prob. Code, § 19000 et seq.) or by a request for payment from the estate's personal representative pursuant to the applicable provisions of the trust document, would constitute a creditor's claim against the trust and would trigger the no contest clause.

In sum, the plain meaning of the trust language in this case does not demonstrate an unequivocal intent on Robert's part to disinherit a beneficiary who files a creditor's claim against the probate estate.

## DISPOSITION

The order of the probate court is affirmed.  Kennon is to recover her costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.